■ JAMES F. TIERNAN, as Administrator of MAUREEN A. TIERNAN, Deceased, Respondent, v BRUCE R. HEINZEN, Defendant, and LEE F. VOSBURGH et al., Appellants. — In an action, *inter alia,* to recover damages for wrongful death attributable to medical malpractice, defendants Vosburgh, Finn and Kotarsky appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Nassau County (Christ, J.), entered March 31, 1983, as, upon a jury verdict, as reduced and amended by the court upon appellants' posttrial motion, awarded plaintiff damages in the principal sum of $1,650,000.

Judgment modified, on the facts, by reducing the amount awarded to plaintiff to $150,000, representing loss of decedent's services and pain and suffering and by adding a provision severing plaintiff's claim for wrongful death and granting a new

trial with respect thereto, unless, within 30 days after service upon plaintiff of a copy of the order to be made hereon with notice of entry, plaintiff shall serve and file in the office of the clerk of the Supreme Court, Nassau County, a written stipulation consenting to reduce the verdict with respect to the claim for wrongful death to the principal sum of $750,000, and entry of an amended judgment in accordance therewith. As so modified, judgment affirmed, insofar as appealed from, without costs or disbursements. In the event the plaintiff so stipulates then the judgment, as so reduced and amended, is affirmed, insofar as appealed from, without costs or disbursements.

On April 24, 1974, plaintiff's decedent, Maureen Tiernan, visited her obstetricians, a partnership consisting of defendants Finn, Vosburgh, and Kotarsky. She had missed a menstrual period and correctly suspected that she was pregnant. Mrs. Tiernan further reported that she had discovered a small lump in her left breast about two weeks before the visit. Doctor Kotarsky examined her and discovered a four- to five-centimeter mass in the upper outer quadrant of her left breast. He referred his patient to defendant Dr. Heinzen, a surgeon. Dr. Heinzen examined Mrs. Tiernan on April 27, 1974. He examined the glands around her neck and both breasts and concluded that the mass was a benign tumor, either a fibroadenoma or a localized area of enlargement of a lobule area of the breast connected with the pregnancy. Dr. Heinzen referred Mrs. Tiernan back to her obstetricians with instructions to check for any change in the mass.

At the end of July, 1974, defendant Finn noticed that the mass had grown to fill the entire left upper quandrant of the breast. The mass had also entered two other quandrants of the breast. He sent Mrs. Tiernan back to Dr. Heinzen who performed a biopsy on the mass on August 1, 1974. While his patient was under the same anesthesia, Dr. Heinzen, having determined that the mass was malignant, performed a radical mastectomy of the left breast. Radiation therapy followed. In November, Mrs. Tiernan's child was delivered by caesarian section.

On January 6, 1975, lumps in Mrs. Tiernan's operation incision were discovered. The lumps were found to be cancerous on January 10. By February, 1975, the cancer had spread to Mrs. Tiernan's hip and back. Finally, on Thanksgiving Day, 1975, Mrs. Tiernan died of a cerebral hemorrhage caused by the spreading of the cancer to her brain.

At trial, plaintiff's expert, a professor of obstetrics and gynecology at Cornell Medical School, testified that in its treatment of Mrs. Tiernan the obstetrical group had departed from the

standard of care in the community in 1974. He claimed that there was no departure in the group's original referral of Mrs. Tiernan to a surgeon. However, he continued, after the surgeon referred her back to the obstetricians they failed to follow accepted practice by omitting to make an accurate and careful delineation of the mass, by not performing other diagnostic tests, and by not examining the breast at more frequent intervals. The expert further stated that these departures from accepted practice were the competent producing cause of Mrs. Tiernan's death, claiming that if the malignancy had been diagnosed in its early stages the prognosis for recovery would have been excellent.

We, unlike our dissenting colleagues, believe that a prima facie case of medical malpractice was made out against the defendant obstetricians. It is true that the obstetricians could not perform an excisional biopsy on the mass. However, plaintiff's expert testified that other diagnostic tests were available to them, namely, mammography, thermography, sonography, and needle aspiration, and that these tests, in the aggregate, had an accuracy rate of over 95%. The dissent cites testimony of defense witnesses who claimed that these tests were either unavailable, untrustworthy, or not indicated; however, this testimony merely created an issue for the jury. Indeed, it is noteworthy that the defendant obstetricians have not argued before this court that a prima facie case of medical malpractice was not made out.

We also reject the dissent's conclusion that the jury's verdict, which exonerated Dr. Heinzen but found the obstetrical group negligent, was logically inconsistent and should be overturned. It is true, as the dissent states, that plaintiff's theory was, *inter alia,* that Dr. Heinzen, as well as the obstetrical group, departed from accepted medical practice by failing to perform diagnostic tests and relying on clinical judgment. However, the jury's verdict, which rejected the theory as to Dr. Heinzen but accepted it as to the other defendants, was not inconsistent as a matter of law, since one verdict was not dependent on the other. Dr. Heinzen's liability is completely separate and apart from that of the obstetricians, and is not derivative (see *Collins v New York Hosp.,* 67 AD2d 872, 874, mod on other grounds 49 NY2d 965). Moreover, one of the bases for a finding of negligence on the part of obstetricians, that they failed to examine Mrs. Tiernan's breast at more frequent intervals, was not applicable to Dr. Heinzen, who referred Mrs. Tiernan back to the obstetricians for that purpose. Although we affirm the jury's verdict as to liability, we find that under the circumstances of this case the trial

court's award of $1,500,000 for wrongful death was excessive to the extent of $750,000. The remaining awards of $50,000 for plaintiff's loss of decedent's services and $100,000 for pain and suffering have not been challenged on this appeal. We therefore remit this matter for a new trial as to damages, with respect to the claim for wrongful death, unless plaintiff stipulates to reduce the verdict as to that cause to the principal sum of $750,000. Mangano, Gibbons and Brown, JJ., concur.

Titone, J. P., dissents and votes to reverse the judgment insofar as appealed from and dismiss the complaint, with the following memorandum, in which Thompson, J., concurs. In this wrongful death action, predicated on alleged medical malpractice, the jury found no liability on the part of defendant Heinzen, a surgeon, and that the other defendants, the obstetricians, were fully liable. Inasmuch as this verdict is irreconcilably inconsistent and has no support in the record, the judgment should be reversed insofar as appealed from, and the complaint dismissed.

On April 24, 1974, plaintiff's decedent, Maureen Tiernan, visited her obstetricians, a partnership consisting of Doctors Finn, Vosburgh and Kotarsky, in connection with a pregnancy and a peanut-size lump in her left breast. Dr. Kotarsky noticed the four- by five-centimeter lesion and referred Tiernan to Dr. Heinzen, a surgeon, for evaluation. On April 27, Heinzen examined her and determined that the lesion was benign.

The obstetrical group continued to monitor the mass and, on July 26, 1974, Dr. Finn noted that it had grown much larger. Heinzen saw Tiernan on July 31, 1974, performed a biopsy the next day and, upon ascertaining that there was a malignancy, performed a radical mastectomy. The cancer had spread, however, and following the birth of a child and extensive radiation therapy, Tiernan died in November, 1975.

Plaintiff's theory at trial was that all defendants — the obstetrical group and Heinzen — were negligent in relying upon clinical judgment rather than requesting or performing diagnostic testing at the time of the initial examination. Yet, the jury exonerated Dr. Heinzen.[*]

The jury's verdict is inconsistent and cannot be logically reconciled (see *Pangburn v Buick Motor Co.,* 211 NY 228). By its verdict in Dr. Heinzen's favor, it accepted his procedures and diagnosis that the mass was benign which did not have to be confirmed by biopsy and perforce rejected the plaintiff's contention that a biopsy must be conducted in all cases involving a breast mass. It is, therefore, utterly illogical for the jury to have concluded that Dr. Heinzen was correct in his clinical judgment

---

[*] Heinzen entered into a settlement with plaintiff during trial.

and at the same time find that the other defendants were negligent in relying on that same clinical judgment (cf. *Graddy v New York Med. Coll.,* 19 AD2d 426, 429).

Moreover, plaintiff failed to prove a prima facie case against the obstetricians. The obstetricians could not be charged with liability for failure to perform an excisional biopsy because it was beyond the scope of their practice. According to the expert testimony offered by the plaintiff, biopsy was the only method which could have rendered a definitive diagnosis and that falls within the surgeon's realm.

Other tests, such as thermography and sonograms, were unavailable at the time of decedent's treatment and needle biopsies, the shortcomings of which were acknowledged by plaintiff's expert, were considered unreliable and were not being performed in the medical community. Insofar as a mammogram was concerned, Dr. Heinzen testified that it was not wise to perform one during pregnancy and since the technique had not been fully developed and would not have revealed any finding more probative than the clinical impression, it was not indicated in this case.

In short, the record contains no evidence from which the jury could reasonably have concluded that the obstetricians were negligent in their treatment in this case (see *Kinch v Adams,* 38 NY2d 792, affg on opn at 46 AD2d 467; *Ulma v Yonkers Gen. Hosp.,* 53 AD2d 626, 627; cf. *Koehler v Schwartz,* 48 NY2d 807). Accordingly, the judgment should be reversed, insofar as appealed from, and the complaint dismissed.