■ PAUL GALLO et al., Respondents, v SUPERMARKETS GENERAL CORP. et al., Appellants. I. SIDERIS COMPANY, Third-Party Defendant-Respondent.—In a negligence action to recover damages for personal injuries, etc., defendant Supermarkets

General Corp. and defendants and third-party plaintiffs Shera-dell Realty Corp., Sherilu Construction Corp., and J.L.F. Contracting Corp. appeal from a judgment of the Supreme Court, Kings County (Monteleone, J.), entered February 28, 1984, which, upon a jury verdict, was (1) in favor of plaintiff Paul Gallo and against them in the principal amount of $1,710,380; (2) in favor of plaintiff Nancy Gallo and against the same defendants in the principal amount of $500,000; and (3) in favor of third-party defendant I. Sideris Co. and against third-party plaintiffs Sheradell Realty Corp., Sherilu Construction Corp. and J.L.F. Construction Corp. on their third-party complaint.

Judgment modified, on the facts, by deleting therefrom the provision awarding plaintiff Nancy Gallo the principal amount of $500,000, and substituting therefor a provision severing the action as against her and granting the defendants in the main action a new trial on the issue of her damages, unless she serves and files in the office of the Clerk of the Supreme Court, Kings County, a written stipulation consenting to reduce the verdict in her favor to the principal amount of $300,000, and to the entry of an appropriate amended judgment. As so modified, judgment affirmed, with costs to the plaintiffs. Plaintiff Nancy Gallo's time to serve and file the aforementioned stipulation is extended until 20 days after the service upon her of a copy of the order to be made hereon, with notice of entry. In the event that plaintiff Nancy Gallo so stipulates, then the judgment, as so reduced and amended, is affirmed, with costs to the plaintiffs.

Plaintiff Paul Gallo, a young man in his twenties, was severely injured when a "tar lugger" containing hot tar expelled its contents onto him at a jobsite. The record reveals that he suffered extensive third degree burns over a significant portion of his body, including his face, head, neck, chest, arms and waist. The injuries resulted in his hospitalization for nearly two months, during which time he was subjected to painful procedures including debridement, skin grafting, and the removal of 75% of his right ear. The facial scars are permanent and extremely disfiguring. In addition, his eyelids and tear ducts no longer function properly. Were he to undergo further plastic surgery, the necessary procedures would take more than five years to complete, would involve major surgery, and still would not completely restore his appearance. There was also uncontradicted testimony that the injuries have resulted in severe psychological and mental problems for this plaintiff, resulting in his inability to work, fear

of contact with people, fear of hot liquids, and his inability to look at himself in the mirror. In short, this formerly healthy, athletic, social, confident and helpful young man has now become a virtual recluse, who can no longer lead a normal life. In fact, the psychiatrist who testified at trial opined that Mr. Gallo would need 10 years of psychotherapy on a regular basis, and, thereafter, continued contacts, on an irregular basis.

In light of the above, it cannot be said that the award of $1,400,000 for this plaintiff's pain and suffering was excessive (*Rush v Sears, Roebuck & Co.,* 92 AD2d 1072), nor can the monetary award for future medical expenses be upset on this basis. A plastic surgeon, Dr. Fischman, testified at trial that the major procedures would cost approximately $40,000 at present prices, and that further procedures would be required in order to revise the scarring produced by the initial procedures, as well as to address the lesser deformities. As has already been indicated, another doctor testified that Mr. Gallo would require weekly psychotherapy for a period of approximately 10 years, and, thereafter, continuing treatment on an irregular basis. He also opined that medication could cost this plaintiff several hundred dollars per year. However, we do find the award of damages to plaintiff Nancy Gallo on her derivative action to be excessive to the extent indicated herein.

On the liability issue, defendant Supermarkets General Corporation (hereinafter Supermarkets) was properly found by the jury to be liable for the accident, as the evidence adduced at trial adequately supported the jury's finding that Supermarkets retained a significant degree of control over the construction project at which the injuries occurred. In fact, it was established that its field representative, Gilbert Yuffredo, could order changes in both the specifications and the methods used, inspected the project on a regular basis, and discussed both the progress and the details of the job with the general contractor's representative, Fred Pane. The language of the contract between Sheradell Realty Corp. (hereinafter Sheradell) and Supermarkets also supports a finding that Supermarkets retained control over the project in matters such as choosing the subcontractors and ordering changes.

This level of control takes the case out of the "detail of work" exception, which might otherwise preclude recovery from Supermarkets due to the fact that the injury arose out of a defect in the subcontractor's equipment (*DaBolt v Bethlehem Steel Corp.,* 92 AD2d 70; *Lagzdins v United Welfare Fund-Security Div. Marriott Corp.,* 77 AD2d 585). Accordingly,

the finding of liability on the part of Supermarkets will not be disturbed (*Sweeting v Board of Coop. Educ. Servs.,* 83 AD2d 103, 113-114; *Buonassisi v Sears, Roebuck & Co.,* 43 AD2d 701).

Although Trial Term apparently found it necessary to intervene in the trial, it did not display any bias or prejudice with respect to any of the parties. Accordingly, no error was committed in this regard. In light of the often unprofessional conduct of the trial attorneys, and their constant bickering, Trial Term's participation in the questioning was often the only way to get the trial back on course. Moreover, on the one occasion on which the trial court elicited significant testimony over defendants' objections, it properly refrained from giving any indication of its assessment of the testimony, and did not interfere in any way with defendants' presentation of the evidence or their cross-examination of plaintiffs' witnesses. The questions asked were apparently intended to clarify the testimony and expedite the trial, and, hence, do not warrant reversal (*Bumstead v Sweeney,* 24 AD2d 674).

Turning to the third-party action, the jury's finding that I. Sideris Company (hereinafter Sideris) was not culpable in the happening of the accident was amply supported by the record, since the evidence showed that Sideris was not a subcontractor, but had merely sent two of its men to help J.L.F. Contracting Corp. (hereinafter JLF) on the construction site. In short, there is no evidence that Sideris exercised any degree of control over the work being performed or the equipment being used. Consequently, dismissal of the third-party complaint was justified.

Two of the trial court's evidentiary rulings also require brief comment. During the damages phase of the trial, the court admitted into evidence photographs of the injured plaintiff taken while he was undergoing treatment at the hospital. There was evidence that Mr. Gallo had looked at himself in the mirror prior to undergoing the skin graft surgery, and he was able to testify that the photographs in question accurately portrayed his appearance at that time. Such testimony suffices to establish the admissibility of the photographs, since any discrepancies which may exist between his portrayal therein and what other people observed is properly addressed to the weight which the jury might ascribe to the photographs and not to their admissibility. Accordingly, no error was committed in this regard. Moreover, since JLF has failed to provide this court with copies of the photographs which it claims were prejudicial, it is precluded from obtaining review of that issue

here. In any event, judging from such number of these photographs as were included in plaintiffs' appendix, we conclude that the photographs were not prejudicial. While the photographs reveal some rather unsightly injuries, they were introduced only during the damages phase of the trial, where they were clearly relevant to the jury's assessment of Mr. Gallo's pain and suffering, and helped the jury to understand the medical testimony relating to Mr. Gallo's treatment (*Caprara v Chrysler Corp.*, 71 AD2d 515, *affd* 52 NY2d 114, *rearg denied* 52 NY2d 1073; *New v Cortright*, 32 AD2d 576).

Defendants' remaining contentions have been considered and have been found to be without merit. Thompson, J. P., Niehoff, Rubin and Kunzeman, JJ., concur.