OPINION OF THE COURT
Ira Gammerman, J.
In this action to recover damages for medical malpractice, the jury awarded plaintiff Emma McDougald $9,650,102 and plaintiff Johnny McDougald $1,500,000. All defendants move to set the verdict aside maintaining that the award to plaintiff Johnny McDougald and certain portions of the award to Emma McDougald are excessive. Defendants also argue that it was error for the court to charge the jury that Emma Mc-Dougald could recover damages for loss of the enjoyment of life, even if. she was unaware of that loss and, further, to instruct the jury to make separate awards for conscious pain and suffering and the loss of enjoyment of life.
On September 7, 1978 Emma McDougald, then 31 years old, underwent an elective Cesarean section performed by defendant Garber at defendant New York Infirmary. Anesthesia was provided by defendants Armengol and Kulkarni. As a result of a series of tragically shocking acts of medical negligence Mrs. McDougald sustained profound neurological injury and has remained confined to the hospital to date. It is not disputed that her injury is permanent and that she will require custodial care for the rest of her life. The impact of her injury on her ability to appreciate her condition and to experience pain was vigorously contested and will be discussed below.
The jury, finding all defendants liable, made itemized awards to Emma McDougald as follows:
loss of earnings — $ 770,978;
future custodial care — $2,025,750;
future nursing care — $2,353,375;
conscious pain and suffering — $1,000,000;
loss of enjoyment of life — $3,500,000.
Only defendant Armengol maintains that the award for loss of earnings is excessive. That claim is based on the argument that such award should be reduced by the amount that *459 plaintiff Emma McDougald would have spent for "personal consumption” had she not been permanently injured and required custodial care. The question of "personal consumption” was raised during the cross-examination of the economist called by plaintiffs. The jury was free to consider this factor in making its award for loss of earnings. The jury was not, however, compelled to make the reduction claimed by defendant Armengol.
Defendants Garber, Kulkarni and New York Infirmary attack the award for custodial care arguing that proof was offered that an annuity could be purchased from Metropolitan Life Insurance Company to provide such future custodial care for a premium of approximately $939,000. The proof offered on this point was, to say the least, inconclusive. The witnesses produced by defendants on this issue were not at all sure that such annuity could be purchased by the plaintiffs here. Although in an appropriate case, with appropriate proof, such annuity premium might be considered a proper measure of damages for future custodial care, the testimony offered by defendants on this issue, in this case, was insufficient.
The award for future nursing care, however, raises serious questions. The basis of that award was testimony by Dr. Lawrence Kaplan, a neurologist who examined Mrs. McDougald on two occasions, that her life expectancy might be extended by constant observation relating to aspiration or the development of bed sores. This testimony was given after that same doctor had testified that Mrs. McDougald required skilled nursing care and that the cost of such nursing care and custodial care at a private institution would be approximately $250 a day. Indeed, it was that testimony which was the basis for the economic projection of the cost of future custodial care discussed supra. The evidence offered by plaintiffs was insufficient to establish that round-the-clock nursing care was required and the jury award for this item of damage cannot be sustained.
As indicated above, there was substantial dispute with respect to the impact of Mrs. McDougald’s neurological injuries on her ability to appreciate her circumstances and to experience pain. There was sufficient proof offered to support the jury’s finding that, although Emma McDougald is severely neurologically impaired, there is, to some extent, a level of consciousness which permits her to experience pain and to appreciate her condition. Testimony by an expert witness, as well as by family members, indicated a degree of conscious *460 ness demonstrated by variable responsiveness to stimuli of sight, sound, light and touch. It was because of this dispute and because the jury could have concluded that Emma Mc-Dougald was so severely neurologically impaired that she could neither experience pain nor undergo conscious suffering that the court instructed the jury to consider conscious pain and suffering and loss of the normal pleasures and pursuits of life separately.
It is not disputed that Mrs. McDougald will never be able to engage in any of the activities and relationships which constitute a normal life, i.e., marriage, motherhood, family and friends, work and school and active participation in her church group. She has been deprived of the ability to derive any joy or satisfaction from the ordinary pursuits of daily life.
Most often, a devastating injury which prevents a person from living a normal life is accompanied by physical pain as well as a wide array of mental and emotional responses characterized under the broad rubric of suffering. Loss of the normal pursuits and pleasures of life as a factor to be considered in assessing damages for pain and suffering is well established. (Gallo v Supermarkets Gen. Corp., 112 AD2d 345 [2d Dept 1985]; Lebrecht v Bethlehem Steel Corp., 402 F2d 585 [2d Cir 1968]; Grunenthal v Long Is. R. R. Co., 388 F2d 480 [2d Cir 1968].) The issue presented here was not whether it is appropriate to consider loss of the enjoyment of life in assessing general damages but whether that loss is compensable even if the injured plaintiff is so severely impaired as to be rendered incapable of appreciating the loss. Defendants maintain that no damages for loss of the pleasures and pursuits of life are recoverable unless that loss is consciously perceived. Accepting that argument would lead to the conclusion that a severely brain damaged plaintiff rendered totally incapable of experiencing any conscious pain or appreciating his or her condition would be entitled to no general damages. The subjective perception standard urged by defendants would result in the paradoxical situation that the greater the degree of brain injury inflicted by a negligent defendant, the smaller the award the plaintiff can recover in general damages. Conceptually, the loss of the enjoyment of life and conscious pain and suffering are distinguishable. (Thompson v National R. R. Passenger Corp., 621 F2d 814 [6th Cir 1980].) Proof of the loss of enjoyment of life relates not to what is perceived by the injured plaintiff but to the objective total or partial limitations on an individual’s activities imposed by an injury. A jury, if *461 properly charged, will not make redundant awards in assessing damages for the loss of enjoyment of life and conscious pain and suffering. The loss is to be assessed objectively, that is, by the difference between the injured plaintiff’s current capacity and those which existed before the injury.
Defendants in essence are urging that the injured plaintiff unable to experience conscious pain and suffering should be considered as, in fact, dead. Recovery for wrongful death does not permit an award for damages to the decedent for the loss of enjoyment of life. It does, however, permit an award to the children of the decedent for loss of parental guidance. Because Emma McDougald is alive, such award cannot be made to her children nor was any sought. As long as Mrs. McDougald lives, the damages to which she is entitled are those that one still alive is entitled to, including an objective award for loss of the pleasures and the pursuits of life.
As indicated above, because of the nature of the injury here (and the conflicting proof relating to Emma McDougald’s level of consciousness), the jury was instructed to consider the loss of enjoyment of life as separate from conscious pain and suffering, as follows:
"In this case, however, because of the dispute with respect to the level of Emma McDougald’s perception, it is necessary to consider pain and suffering separate from the loss of the enjoyment of life.
"Conscious pain and suffering means just that, pain and suffering of which the injured person is aware. Physical pain is the physiological response of the body to illness or injury. It requires at least some level of awareness. It requires the injured person to experience some unpleasant or painful sensation. If Emma McDougald is so neurologically impaired that she is incapable of experiencing any unpleasant or painful sensation, then she is not entitled to damages for conscious pain.
"Suffering relates primarily to the emotional reaction of the injured person to the injury. Thus for an injured person to experience suffering there must, again, be some level of awareness. If Emma McDougald is totally unaware of her condition or totally incapable of any emotional reaction then she cannot recover damages for suffering.
"If, however, you conclude that there is some level of perception or that she is capable of an emotional response at some level, then damages for pain and suffering should be *462 awarded for such pain and suffering caused by her injury that you find Emma McDougald has experienced and will experience in the future.
"Damages for the loss of the pleasures and pursuits of life, however, require no awareness of loss on the part of the injured person. Quite obviously Emma McDougald is unable to engage in any of the activities which constitute a normal life, the activities she engaged in prior to her injury. She has been deprived of the ability to derive pleasure from living. Loss of the enjoyment of life may, of course, accompany the physical sensation and emotional responses that we refer to as pain and suffering and, in most cases, does. It is possible, however, for an injured person to lose the enjoyment of life without experiencing any conscious pain and suffering. Damages for this item of injury relate not to what Emma McDougald is aware of, but, rather to what she has lost, what her life was prior to her injury and what it has been since September 7, 1978 and will be for the rest of her life.
"In summary, damages for pain and suffering compensate the injured person for the conscious physical and mental discomfort caused by the injury. Damages for loss of the normal pleasures and pursuits of life compensate the injured person for the limitations on his or her life created by the injury.”
In a case involving a comatose patient, where the level of the injured plaintiff’s consciousness is in dispute and subject to conflicting testimony, separation of these issues serves to promote clarity in the minds of jurors as to what items may be properly considered in awarding damages. Further, failure to treat loss of enjoyment of life separately in the situation of the comatose plaintiff would essentially obviate one of the prime aims of tort damages, to make an injured plaintiff whole, as far as possible, by compensating for each loss suffered. As was pointed out in Thompson (621 F2d 814, 824, supra), "The court cannot make the victim whole by taking away the permanent injury — it can only award a monetary sum roughly equivalent to the severity of the permanent injury.”
Although the jury was appropriately charged, its award of $4,500,000 to plaintiff Emma McDougald for conscious pain and suffering and loss of the normal pleasures and pursuits of life is excessive. The award to Johnny McDougald of $1,500,-000 on his derivative claim is, however, amply supported by *463 the record. The impact of the injury inflicted on his wife on Mr. McDougald’s life is, indeed, substantially greater than had Mrs. McDougald died as a result of her injuries. He is not only left with the task of raising his two children and maintaining his household (there was testimony that these services were valued at approximately $290,000) but in addition is a constant attendant at the bedside of his wife. Proof established that he spends approximately three hours a day, almost every day, with her and there is little doubt, based on the relationship between Mr. and Mrs. McDougald demonstrated at trial, that such vigilant attendance will continue for as long as they both live.
Defendants’ motions are, therefore, granted to the extent that the award to plaintiff Emma McDougald for future nursing care, conscious pain and suffering and the loss of the pleasures and pursuits of life are set aside and a new trial ordered on those issues alone unless plaintiffs stipulate in writing within 20 days to reduce the amount awarded to Emma McDougald to $4,796,728.