**Anna RUFINO, As Guardian Ad Litem of Neil Rufino, and Anna Rufino, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 517, Docket 86–6175.

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1986.
Decided Sept. 24, 1987.

Charles Kramer, New York City (Kramer, Dillof, Tessel, Duffy & Moore, of counsel, Charles F. McGuire, on brief), for plaintiffs-appellants.

Alan Nisselson, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Steven E. Obus, Asst. U.S. Atty., of counsel), for defendant-appellee.

Before KAUFMAN and MAHONEY, Circuit Judges.*

MAHONEY, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York (Charles E. Stewart, *Judge*)[1] rendered in an action brought under the Federal Tort Claims Act

---

* Judge Mansfield, originally a member of the panel, died on January 7, 1987. The appeal is being decided by the remaining members of the panel pursuant to 2d Cir.R. § 0.14.

1. Judge Stewart's memorandum decision is reported at 642 F.Supp. 84 (S.D.N.Y.1986), and a revision thereof made in response to a motion by plaintiffs at 642 F.Supp. 87.

("FTCA"), 28 U.S.C. §§ 2671–2680 (1982) [2] to redress injuries caused by defendant. Plaintiffs contend that two damage awards rendered by the district court are grossly inadequate, and that the trial court should have awarded damages for Neil Rufino's loss of the normal pursuits and pleasures of life. We find that the latter contention has merit, and accordingly reverse in part and remand for a reassessment of Neil Rufino's damages.

## I. BACKGROUND

On April 12, 1981, Neil Rufino—complaining of chest pain—was taken to the Bronx Veterans Administration Medical Center. While there, he suffered a massive heart attack. He was treated, and placed on a respirator. By the next day, Rufino's condition had stabilized; one of his treating cardiologists concluded that he had recovered from the heart attack. There were plans to take him off the respirator by April 14. Early in the morning of April 14, due to the conceded negligence of defendant,[3] see 642 F.Supp. at 85, Rufino went into cardiac and respiratory failure; he was deprived of oxygen, and lapsed into a permanent comatose state.[4]

Liability under the FTCA having been admitted, a bench trial on the issue of damages was held before Judge Stewart for three trial days in January 1986. Plaintiff Anna Rufino, as guardian *ad litem* of her husband Neil Rufino, sought damages for medical expenses and pain and suffering.[5] Anna Rufino sought damages for loss of consortium in her own right.

An issue sharply contested at trial was the extent, if any, of Neil Rufino's conscious awareness following the accident.

There is evidence of record indicating that there were several occasions on which he appeared to respond to outside stimuli, indicating some level of awareness. On the other hand, defendant presented testimony to the effect that Mr. Rufino was in a chronic vegetative state with no conscious awareness of his surroundings.

In his original memorandum decision dated March 18, 1986, Judge Stewart noted that Mr. Rufino received (and would continue to receive throughout his life) $3,302 in Veteran's disability benefits per month, of which roughly $1,928 represented additional benefits paid due to defendant's negligence. He further noted that as a disabled veteran (even prior to April, 1981), Mr. Rufino was entitled to free medical care provided by the Veterans' Administration ("V.A."), had availed himself of that care, and had expressed no dissatisfaction with it. Accordingly, no award was made for past or future medical expense, and no contention was made on appeal that this ruling was erroneous.

Based on the lay and medical testimony adduced at trial, Judge Stewart awarded $75,000 to Mr. Rufino for his past and future pain and suffering, and $75,000 to Anna Rufino for past and future loss of consortium. The district court took into account $71,114.67 in additional disability benefits paid to Mr. Rufino from the time of the accident up to December 1, 1985 (the result of the monthly increase noted above).

Plaintiffs thereafter moved "for revision of the [district court's] memorandum decision and order and for a new trial on certain of the issues." 642 F.Supp. at 87. In a decision dated June 23, 1986, Judge Stew-

---

2. Jurisdiction was premised upon 28 U.S.C. § 1346(b) (1982), which vests the federal district courts with exclusive jurisdiction over FTCA cases "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

3. According to plaintiffs' complaint, a mucus plug blocked Rufino's endotrachial tube, which "developed and/or remained" there due to defendant's failure properly to monitor the situation.

4. Neil Rufino died on May 8, 1987.

5. Plaintiff's complaint did not specifically claim damages for loss of the normal pursuits and pleasures of life, but this issue was addressed by the district court, 642 F.Supp. at 87, and argued on appeal without objection by appellee, who contended that such damages are a subcategory of pain and suffering. *Cf.* Fed.R.Civ.P. 15(b).

art supplemented his earlier decision by (1) rejecting Mr. Rufino's claim that damages should have been awarded for his loss of normal pursuits and pleasures of life, principally on the ground that he was "in a comatose condition with no cognitive awareness," *id.;* and (2) increasing Anna Rufino's award for loss of consortium to $100,000.

Plaintiffs appeal, arguing that (1) the $75,000 award to Mr. Rufino was grossly inadequate and was based on the district court's "clearly erroneous" findings that Rufino had no cognitive awareness and very limited conscious pain and suffering following the accident; (2) the award of $100,000 to Anna Rufino for past and future loss of consortium was grossly inadequate; and (3) Judge Stewart's rulings that cognitive awareness is a prerequisite to a recovery for loss of normal pursuits and pleasures of life and that Mr. Rufino should not be compensated therefor were in error.

## II.  DISCUSSION

### A.  *The Pain and Suffering Award*

■ We will accept *arguendo* plaintiffs' contention that Judge Stewart's award to Mr. Rufino for the latter's pain and suffering was the "direct result" of his findings that Rufino had no cognitive awareness and very limited conscious pain and suffering. *See* Brief for Plaintiffs-Appellants at 9. Plaintiffs assail those findings as clearly erroneous.

Plaintiffs candidly acknowledge our limited power to review the factual findings made below. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R. Civ.P. 52(a). They nonetheless contend that in view of the "totality of the evidence," Judge Stewart's findings are clearly erroneous.

In this regard, there is evidence of record indicating that Mr. Rufino was capable of responding to outside stimuli. For exam-

ple, one of his attending nurses testified on direct examination that he turned away from noxious odors such as ammonia, that he turned to and from sound, and that he responded to painful stimuli such as pin pricks. Members of Mr. Rufino's family indicated that over time, he became more aware of his surroundings. Dr. Mihai Dimanescu, a diplomate in neurosurgery who testified for plaintiffs, examined Mr. Rufino during the latter's two stays at South Nassau Communities Hospital. During the first stay, from February 10 to March 1, 1982, Dr. Dimanescu noted that Mr. Rufino opened his eyes on his own, and in response to painful stimulation; that he could, on occasion, track with his eyes; that he displayed a good cough reflex and an ability to swallow; that he grimaced in response to noxious stimuli; and that on occasion, he would spontaneously move his left foot. During the second stay, from June 10 to June 14, 1983, Dr. Dimanescu noted that Mr. Rufino appeared alert; that he tracked well with his eyes; that he displayed some movement in his extremities; and that, on command, he was capable of squeezing with his left hand. On the basis of this second examination, Dr. Dimanescu concluded that Mr. Rufino "was clearly better than before. He obviously ... showed some definite improvement."

Dr. Eric Stern, the assistant chief of cardiology at the Bronx V.A. Hospital and one of Mr. Rufino's treating cardiologists, testified for the defendant. From April, 1981 to the time of trial, at three to four month intervals, Dr. Stern visited Mr. Rufino once or twice per week for one month periods. On direct examination, Dr. Stern testified that there were times when Mr. Rufino appeared alert, but he did not believe "that significant cognition accompanies this alertness." On redirect, Dr. Stern described Mr. Rufino's situation as one in which "[c]ommands are not obeyed as commands, they show a general awareness at some lower level, in my view, of the nervous system to input from the outside, but do not by any means imply integration or understanding of what is occurring in the outside world...."

Defendant also called Dr. Richard Schoenfeldt, a neurologist, to testify as an expert witness. Dr. Schoenfeldt had not treated Mr. Rufino, but had examined him on one occasion in February, 1985. Dr. Schoenfeldt testified that in his opinion, "Mr. Rufino is in a chronic or persistent vegetative state.... [T]here's every indication that he does not experience pain.... I could elicit no response to auditory, visual or limb stimulation.... [T]here did not seem to be a conscious awareness of what was going on around him."

Based in part on the foregoing evidence, the district court decided

> to accept as more reliable the testimony of the defendant's witnesses, one of whom has had frequent opportunities over the past several years to observe Rufino. We accept, however, the testimony of plaintiffs' experts to the extent that they have found some evidence of very limited conscious pain and suffering. Accordingly, we find that under all the circumstances, plaintiff is entitled to recovery on the claims for past and future pain and suffering and for loss of consortium.

642 F.Supp. at 86.

We cannot gainsay these findings. It is not the function of an appellate court to reconsider *ab initio* the evidence of record, reversing factual findings made below where they strike us as less plausible than others which might have been made. Rather, our task is to examine the facts found below against the background of the record, reversing a finding as "clearly erroneous" only when our examination leaves us " 'with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). On this record, we cannot say that a mistake was made.

Nor can we say that Judge Stewart's award to Mr. Rufino for the latter's past and future pain and suffering was "so

grossly and palpably inadequate as to shock the court's conscience." *See Korek v. United States,* 734 F.2d 923, 929 (2d Cir.1984). As we have said, "[i]t is not our function to second guess [the trier of fact]," *Caskey v. Village of Wayland,* 375 F.2d 1004, 1008 (2d Cir.1967), and "measuring pain and suffering in dollars is inescapably subjective." *Gibbs v. United States,* 599 F.2d 36, 39 (2d Cir.1979). As indicated hereinafter, however, we will remand for reconsideration of Mr. Rufino's damages limited to the question of loss of enjoyment of life.

### B. *The Loss of Consortium Award*

■ On plaintiffs' motion for revision of the district court's decision, Judge Stewart increased Mrs. Rufino's loss of consortium award to $100,000. While that fact is not *per se* dispositive of plaintiffs' claim that the award was inadequate, we certainly consider relevant the fact that the district court reconsidered and revised its award upon plaintiffs' request. It was not bound so to do. In any event, we cannot say that an award of $100,000 for loss of consortium was so inadequate as to justify a new trial. *Compare Pruitt v. Sulffolk Ob-Gyn Group, P.C.,* 644 F.Supp. 593, 596 (E.D.N.Y.1986) ($250,000 jury award for loss of consortium reduced to $90,000, applying New York law); *Beckcom v. United States,* 584 F.Supp. 1471, 1485 (N.D.N.Y.1984) ($150,000 award in FTCA case applying New York law);[6] *Tiernan v. Heinzen,* 104 A.D.2d 645, 480 N.Y.S.2d 24, 26 (2d Dep't 1984) ($50,000 award); *Schneider v. Memorial Hosp. for Cancer and Allied Diseases,* 100 A.D.2d 583, 473 N.Y.S.2d 524, 525 (2d Dep't 1984) ($300,000 jury award reduced to $100,000).

### C. *Loss of Normal Pursuits and Pleasures of Life*

■ Finally, plaintiffs challenge the district court's failure to award damages for Mr. Rufino's loss of the enjoyment of the normal pursuits and pleasures of life. The court did not make an explicit ruling as to

---

**6.** See note 2, *supra,* and IIC, *infra.*

whether such loss is a separately compensable item of damages, apart from pain and suffering. Rather, Judge Stewart concluded that in any event, an award of such damages was not warranted on the facts of this case because Mr. Rufino was in a chronic vegetative state with no cognitive awareness. The district court ruled

> that on the facts of this case, plaintiff Neil Rufino is not entitled to an award for loss of the pursuits and pleasures of life. Plaintiff is in a comatose condition with no cognitive awareness. The cases cited to us by the plaintiffs with respect to this issue uniformly involve a plaintiff with the mental capability of understanding and appreciating those "pursuits and pleasures" and the resulting loss thereof. Here, however, we have found that this plaintiff has no such capability. Consequently, we are not persuaded that he is entitled in this respect to a separate award in addition to that for "pain and suffering."

642 F.Supp. at 87 (footnote omitted).

Whether loss of normal pursuits and pleasures of life is a separately compensable element of damages, and whether cognitive awareness is a necessary condition to such an award, are questions which—in this case—must be resolved according to the law of New York. Under the FTCA, "damages are determined by the law of the State where the tortious act was committed, 28 U.S.C. § 1346(b), subject to the limitations that the United States shall not be liable for 'interest prior to judgment or for punitive damages,' 28 U.S.C. § 2674." *Hatahley v. United States*, 351 U.S. 173, 182, 76 S.Ct. 745, 752, 100 L.Ed. 1065 (1956). *See also Birnbaum v. United States*, 588 F.2d 319, 333 (2d Cir.1978). Since the New York Court of Appeals has not as yet resolved these questions,[7] we must do our best to ascertain the rule which would issue from that court, were it faced with the questions before us. *See Francis v. INA Life Ins. Co. of New York*, 809 F.2d 183, 185 (2d Cir.1987) (collecting cases).

There exist three well-known categories of compensatory damages in personal injury cases: (1) loss of earning capacity; (2) out-of-pocket expenses; and (3) pain and suffering. About half of the states recognize a fourth category—"loss of enjoyment of life." *See* Comment, *Loss of Enjoyment of Life as a Separate Element of Damages*, 12 Pac.L.J. 965, 965–66 & n. 11 (1981) (hereinafter "Comment, *Loss of Enjoyment*"). Of those jurisdictions that have considered whether loss of enjoyment of life is a separately compensable item of damages, a minority refuse any recovery; a majority allow it to be considered as a factor to enlighten consideration of a general award for pain and suffering;[8] and a

---

**7.** On January 21, 1987, we ordered the Clerk of this Court to transmit to the Clerk of the New York Court of Appeals a certificate certifying two questions of law for discretionary review: (1) whether, under New York law, "loss of normal pursuits and pleasures of life" or "loss of enjoyment of life" is a separately compensable item of damages apart from other items, such as pain and suffering; and (2) if so, whether a claimant must possess cognitive awareness in order to recover for such a loss. *See* N.Y.Comp. Codes R. & Regs. tit. 22, § 500.17 (1985). On March 24, 1987, the New York Court of Appeals declined to accept the certified questions, on the ground that the same questions presented in our certificate were recently answered by the Supreme Court, New York County, in *McDougald v. Garber*, 132 Misc.2d 457, 504 N.Y.S.2d 383 (1986), a case currently on appeal before the Appellate Division, First Department. *See Rufino v. United States*, 69 N.Y.2d 310, 506 N.E.2d 910, 514 N.Y.S.2d 200 (1987).

It is clear that the New York Court of Appeals did not express any view concerning the merits of *McDougald*, and we fully appreciate its preference, in the circumstances here presented, to allow significant issues arising under state law to be resolved according to the State's usual process—"the considered deliberation and writing of [New York's] intermediate appellate court in a pending litigation." *Rufino*, 69 N.Y.2d at 312, 506 N.E.2d at 911, 200 N.Y.S.2d at 201.

**8.** Pain "is properly characterized as the physiological response by the injured person to a corporeal injury." Comment, *Loss of Enjoyment* at 970. Suffering is "primarily an emotional response derivative of both the pain and injury." *Id.* at 971 (footnote omitted). The concept of loss of enjoyment of life, however, "provides compensation for the deprivation or impairment of the senses or of one's ability to engage in those activities and perform those functions which were part of the victim's life prior to the injury." *Id.* at 972 (footnote omitted).

It has been suggested that those jurisdictions which treat loss of enjoyment of life as an element of pain and suffering do so because of

third group consider it a compensable item of damages in its own right. *See id.* at 967 & nn. 13–16.

On the record before us, however, the initial issue to be resolved is whether New York would allow *any* recovery, whether separately or as a component of pain and suffering, for loss of enjoyment of life to a plaintiff whose condition precluded any comprehension of that loss. Since the district court precluded any such recovery because of Mr. Rufino's condition, a determination that this was an incorrect prognosis as to the course of New York law would require a remand if New York allows such a recovery either separately or as a component of pain and suffering.

As best we can ascertain, only one New York case has squarely addressed this issue. *McDougald v. Garber*, 132 Misc.2d 457, 504 N.Y.S.2d 383 (Sup.Ct.1986), was an action to recover for injuries caused by medical malpractice. There, due to defendants' negligent performance of a Cesarean section, plaintiff suffered permanent neurological injuries, committing her to a lifetime of custodial care. There, as here, the parties disputed the extent of plaintiff's ability to experience pain. Nevertheless, McDougald's jury was instructed to consider separately conscious pain and suffering and loss of the normal pleasures and pursuits of life. It rendered separate awards on each item.

On a motion to set aside certain portions of McDougald's award as excessive, defendants argued that the court erroneously charged the jury that plaintiff could recover for loss of enjoyment of life, even if she could not consciously appreciate that loss. Defendants also challenged the court's instruction that the jury could make separate awards for conscious pain and suffering and loss of enjoyment of life. The court rejected defendants' challenges, stating:

Most often, a devastating injury which prevents a person from living a normal life is accompanied by physical pain as well as a wide array of mental and emotional responses characterized under the broad rubric of suffering. Loss of the normal pursuits and pleasures of life as a factor to be considered in assessing damages for pain and suffering is well established. (*Gallo v. Supermarkets Gen. Corp.*, 112 A.D.2d 345 [491 N.Y.S.2d 796] [2d Dept.1985]; *Lebrecht v. Bethlehem Steel Corp.*, 402 F.2d 585 [2d Cir.1968]; *Grunenthal v. Long Is. R.R. Co.*, 388 F.2d 480 [2d Cir.1968].) [*Grunenthal* was *reversed on other grounds*, 393 U.S. 156 [89 S.Ct. 331, 21 L.Ed.2d 309] (1968).] The issue presented here was not whether it is appropriate to consider loss of the enjoyment of life in assessing general damages but whether that loss is compensable even if the injured plaintiff is so severely impaired as to be rendered incapable of appreciating the loss. Defendants maintain that no damages for the loss of the pleasures and pursuits of life are recoverable unless that loss is consciously perceived.... Conceptually, the loss of the enjoyment of life and conscious pain and suffering are distinguishable. (*Thompson v. National R.R. Passenger Corp.*, 621 F.2d 814 [6th Cir. 1980].) Proof of the loss of enjoyment of life relates not to what is perceived by the injured plaintiff but to the objective total or partial limitations on an individual's activities imposed by an injury. A

"the similar circumstances and seemingly parallel methods of proof surrounding the two concepts." *Id.* at 978. Pain and suffering, though technically distinct concepts, generally appear together, with suffering considered a derivative response of pain. Practical considerations—such as those relating to proof—weigh in favor of treating pain and suffering as "a unitary concept." *Id.* Thus "[d]ue to the similar circumstances under which pain and suffering and loss of enjoyment of life arise, courts ... are attempting to merge the two concepts in much the same manner that pain and suffering were merged." *Id.* The two concepts do not call for

similar proofs, however. Proof of pain and suffering involves evidence of physical injury with its attendant physical and emotional responses. *Id.* Proof of loss of the normal pursuits and pleasures of life, on the other hand, "does not depend on evidence of the injury or the accompanying physical sensations and emotional response. Rather, a 'before and after' method of proof is used which requires evidence of (1) the nature and extent of plaintiff's lifestyle *prior* to being injured, and (2) the limited lifestyle of the plaintiff afterwards." *Id.* at 978–79 (emphasis in original) (footnote omitted).

jury, if properly charged, will not make redundant awards in assessing damages for the loss of enjoyment of life and conscious pain and suffering. The loss is to be assessed objectively, that is, by the difference between the injured plaintiff's current capacity and those which existed before the injury.

. . . .

... Further, failure to treat loss of enjoyment of life separately in the situation of the comatose plaintiff would essentially obviate one of the prime aims of tort damages, to make an injured plaintiff whole, as far as possible, by compensating for each loss suffered. As was pointed out in *Thompson* ..., "The court cannot make the victim whole by taking away the permanent injury—it can only award a monetary sum roughly equivalent to the severity of the permanent injury."

*McDougald,* 132 Misc.2d at 460–62, 504 N.Y.S.2d at 385–87.

In the absence of any other New York authority, we predict that the appellate courts of New York will be persuaded, as we are, by the well reasoned opinion in *McDougald,* and will ultimately rule that a plaintiff need not be consciously aware of loss of enjoyment of life in order to recover therefor.

▆ The further question arises whether, under New York law, a recovery is available for such damages separately, or only as a component or aspect of a recovery for pain and suffering. In *McDougald,* the jury was instructed to consider loss of enjoyment of life as a separate element of damages, apart from pain and suffering, and made a separate award therefor. In its opinion rejecting a challenge to that award, however, the court blurred the distinction, stating that "[l]oss of the normal pursuit and pleasures of life as a factor to be considered *in assessing damages for pain and suffering is well established* [,]" 132 Misc.2d at 460, 504 N.Y.S.2d at 385 (emphasis added, citations omitted), going on to say that the issue presented was "not whether it is appropriate to consider loss of the enjoyment of life *in assessing general*

*damages* but whether that loss is compensable [to a plaintiff incapable of appreciating it.] *Id.* (emphasis added).

*McDougald* placed considerable reliance upon *Thompson v. National Railroad Passenger Corp.,* 621 F.2d 814 (6th Cir.), *cert. denied,* 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980), a case not involving New York law. In *Thompson,* the plaintiffs were Amtrak passengers who sustained injuries in a train accident. The district court rendered various damage awards, including separate sums for pain and suffering and "impairment to ability to enjoy life." 621 F.2d at 817. On appeal, defendants argued that such awards were duplicative. The Sixth Circuit rejected the argument, noting that "[p]ain and suffering ... and loss of enjoyment of life each represent separate losses which the victim incurs.... [P]ain and suffering compensates the victim for the physical and mental discomfort caused by the injury; and loss of enjoyment of life compensates the victim for the limitations on the person's life created by the injury." 621 F.2d at 824.

This analysis appears sound to us. We note, however, that two recent Second Department cases have referred to loss of enjoyment of life as a factor in determining an award for pain and suffering, *see Kavanaugh v. Nussbaum,* 129 A.D.2d 559, 514 N.Y.S.2d 55, 59 (2d Dep't 1987); *Ledogar v. Giordano,* 122 A.D.2d 834, 505 N.Y.S.2d 899, 903 (2d Dep't 1986), but the court was not presented in either case with the question whether a separate award should be made for loss of enjoyment of life. Similarly, our past decisions have recognized that New York allows recovery for loss of enjoyment of life, but shed little light on the question whether an independent recovery therefor is allowable under New York law. *See Modave v. Long Island Jewish Medical Center,* 501 F.2d 1065, 1079 (2d Cir.1974); *Lebrecht v. Bethelehem Steel Corp.,* 402 F.2d 585, 592 (2d Cir.1968); *see also O'Gee v. Dobbs Houses, Inc.,* 570 F.2d 1084, 1092 n. 2 (2d Cir.1978) (Feinberg, J., concurring in part and dissenting in part) (applying Georgia Law); *Grunenthal v. Long Island R.R. Co.,* 388 F.2d 480, 484

(2d Cir.1968) (Federal Employers' Liability Act case), *reversed on other grounds*, 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968).

We cautiously predict that in this evolving area of the law, New York will in due course recognize loss of enjoyment of life as a separately compensable item of damages. Whether or not we are correct in this assessment, however, remand would be required here in any event, since the district court declined to consider loss of enjoyment of life either as a separately compensable item of damages or as a factor in determining pain and suffering, based upon its conclusion that Neil Rufino's lack of cognitive awareness barred any such consideration.

### D. *Punitive Damages Aspects*

■ One final issue remains for our consideration. Defendant contends that permiting awards for loss of enjoyment of life to be assessed against the United States in an action under the FTCA is prohibited by the ban on the award of punitive damages against the United States stated in 28 U.S.C. § 2674 (1982). *Flannery v. United States*, 718 F.2d 108 (4th Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2679, 81 L.Ed.2d 874 (1984), a case remarkably similar to that at bar, found punitive an award of damages for loss of enjoyment of life to a semi-comatose claimant.[9] The Fourth Circuit started with the proposition that the characterization of damages as compensatory or punitive—within the meaning of the FTCA—is one of federal law, inasmuch as the question is related to the federal government's waiver of sovereign immunity. Further, the characterization should be based on a uniform standard, rather than on the various laws of the fifty states. 718

F.2d at 110. The Fourth Circuit held that "[t]o the extent that an award gives more than the actual loss suffered by the claimant, it is 'punitive' whether or not it carries with it the deterrent and punishing attributes typically associated with the word 'punitive.'" *Id.* at 111. Since Flannery was utterly incapable of appreciating his loss, the Court found the award would provide Flannery with "no direct benefit," and if compensatory at all, it would be so only to Flannery's surviving relatives. *Id.*

We disagree with, and therefore decline to follow, *Flannery*. We agree with the Sixth Circuit that the FTCA's prohibition of punitive damages was designed to prohibit "use of a retributive theory of punishment against the government." *Kalavity v. United States*, 584 F.2d 809, 811 (6th Cir. 1978). Even more directly on point, we agree with the Ninth Circuit's explicit refusal to follow *Flannery*, on the ground that the *Flannery* rule would " 'impinge seriously upon the architecture of the Act which provides for recovery according to the *lex loci delictus*.' " *Shaw v. United States*, 741 F.2d 1202, 1208–09 (9th Cir. 1984) (quoting *Felder v. United States*, 543 F.2d 657, 675 (9th Cir.1976)).

The purpose of a recovery for loss of enjoyment of life is clearly to compensate for that loss. The fact that the compensation may inure as a practical matter to third parties in a given case does not transform the nature of the damages. Indeed, such a rule, carried to its logical conclusion, would render all damages recovered by a decedent's estate punitive in nature.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed insofar as it

---

**9.** *Flannery* had been before the Fourth Circuit once before. *See Flannery v. United States*, 649 F.2d 270 (4th Cir.1981). The trial court had found that "impaired capacity to enjoy life" was an independently compensable injury under West Virginia law, and awarded damages despite its finding that Flannery's condition rendered him incapable of enjoying life. *Id.* at 272. Uncertain whether West Virginia law sanctioned such an award to a semi-comatose plaintiff, the Fourth Circuit certified the question to

the West Virginia Supreme Court of Appeals. *Id.* at 273. That court responded, holding that as a matter of West Virginia law, damages for loss of the pursuits and pleasures of life were properly allowed even in the case of a plaintiff with no awareness of the loss.

Upon receipt of that response, nevertheless, the Fourth Circuit after further reflection disallowed the award as punitive, as a matter of federal law. *See Flannery*, 718 F.2d at 110–11.

disallowed any consideration, in determining damages, for Neil Rufino's loss of enjoyment of life, and the case is remanded for reconsideration of Neil Rufino's damages in accordance with this opinion. In all other respects, the judgment is affirmed.