■ Vito Francavilla, Respondent, v Nagar Construction Co., Inc., et al., Respondents, and L.H.L. Realty Company, Appellant and Fourth-Party Plaintiff-Appellant. Nagar Builders Corporation, Third-Party Plaintiff-Respondent; Sunset Organization, Inc., et al., Third-Party Defendants and Fourth-Party Defendants-Respondents.—Appeals from the orders of the Supreme Court, New York County (Myriam J. Altman, J.), entered on November 9, 1987 and December 14, 1987, respectively, are dismissed as superseded by the appeal from the judgment of February 8, 1988, without costs or disbursements.

Judgment of the Supreme Court, New York County (Myriam J. Altman, J.), entered on February 8, 1988, which, following a jury trial, *inter alia,* awarded judgment in favor of defendants Nagar Construction Co., Inc. and Nagar Builders

Corporation against L.H.L. Realty Company in the amount of $120,000 plus interest, costs and disbursements, is unanimously modified on the law and the facts to the extent of vacating that portion of the judgment directing L.H.L. Realty to pay $120,000 to defendants Nagar Construction Co., Inc. and Nagar Builders Corporation, and otherwise affirmed, with costs and disbursements to L.H.L. Realty Company.

Appellant L.H.L. Realty, a partnership, was the owner of a four-story apartment building in Brooklyn. In December of 1983, the structure was in the process of being gutted and renovated for the purpose of creating duplex cooperative apartments. Each of the upper-floor apartments was to be given direct access to the roof by means of a stairway. Nagar Construction Co., Inc. had been retained pursuant to a written agreement to be the general contractor for the project. Nagar, in turn, had hired a number of subcontractors, including the Sunset Organization, which was primarily responsible for framing and erecting the interior drywalls, and M & W Construction Co., Inc., whose job it was to cut the stairwell openings. On December 29, 1983, plaintiff Vito Francavilla, a carpenter's helper employed by Sunset, was on the roof assisting his supervisor in completing a stairwell bulkhead. In order to construct the framing, plaintiff needed another stud so he walked over to a pile of studs placed on another section of the roof. Unknown to plaintiff, this pile was stacked over another stairwell opening that had been covered with something which he believed to be part of the roof. However, as soon as plaintiff picked up a stud, the cover on which he was standing collapsed, causing him to fall through the stairwell opening and sustain bodily injuries.

It should be noted that the stairwell openings on the roof had been covered either by M & W Construction Co. or Nagar's own laborers. Moreover, it was either employees of Nagar or Sunset who had loaded the studs on top of the cover through which plaintiff fell. Nagar's job supervisor conceded at trial that he was present at the site daily and that it was his duty to control the safety conditions. In that regard, he had inspected the covers on the stairwell openings to ascertain whether they were properly secured. Nagar also had a job coordinator who exercised general supervisory authority and regularly visited the site to monitor progress. Both the job supervisor and the job coordinator were on the premises at the time of the accident. Indeed, the evidence demonstrates that Nagar possessed sole and exclusive supervision and control over the entire project. Appellant did not participate in

any of the actual construction work; L.H.L. Realty in no manner supervised or advised the general contractor or any of the subcontractors, nor did it have any employees stationed on the site other than some porters who would occasionally sweep the sidewalks, and L.H.L. Realty had no physical contact with the roof or the stairwell openings.

Plaintiff asserted at trial that he was unaware of the identity of the building's owner, that L.H.L. Realty did not supervise him and did not have a representative on the premises when the accident occurred. Nagar's job supervisor admitted that the owner was not involved in the actual construction work and did not exercise any supervision over the laborers. He stated that while principals of L.H.L. Realty did sometimes visit the project, they took no part whatever in the ongoing construction. According to the testimony of an employee of appellant's management company, these visits consisted (1) of the principals of L.H.L. Realty meeting with their accountants to prepare a schedule of capitalization on work that had already been completed and (2) of the principals accompanying bank officials to the site to inspect the finished work in order for them to be able to draw on additional bank funds. Further, both the comptroller and project foreman for Sunset stated that appellant did not have any connection at all to the construction work. There was, therefore, no proof that anyone on behalf of L.H.L. Realty had even been on the roof, much less that an L.H.L. Realty representative had even observed or inspected the stairwell openings or covers. Clearly, the evidence is devoid of any indication of either actual or constructive notice of a defective condition by appellant.

In awarding the sum of $120,000 to Nagar Construction Co., Inc. and Nagar Builders Corporation against L.H.L. Realty, the jury determined that the latter was 30% liable and should, therefore, pay to the Nagar defendants such proportion of the total $400,000 verdict. L.H.L. Realty concedes that as owner of the property it may be held strictly liable to the plaintiff by virtue of Labor Law § 241-a and vicariously liable by Labor Law § 241 (6), which imposes liability on an owner for the negligence of its general contractor. The only issue raised on appeal is whether the owner of the property, L.H.L. Realty, is entitled to be indemnified by the Nagar defendants in accordance with their contract and the common law. Since the terms of the contract are clear and uncontroverted, and there was no evidence of negligence, active or otherwise, on

the part of L.H.L. Realty, appellant was entitled to judgment in its favor on the issue of indemnification as a matter of law.

Pursuant to the contract between the parties, section 4.3.1 thereof provides that the "Contractor shall supervise and direct the Work, using his best skill and attention. He shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the contract." Section 4.3.2 states that the "Contractor shall be responsible to the Owner for the acts and omissions of his employees, Subcontractors and their agents and employees, and other persons performing any of the Work under a contract with the Contractor."

Article 10 of the contract, entitled "Protection of Persons and Property", charges the contractor with responsibility for "initiating, maintaining and supervising all safety precautions and programs in connection with the Work" (§ 10.1.1). Moreover, the "Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to: .1 all employees on the Work and all other persons who may be affected thereby; .2 all the work and all materials and equipment to be incorporated therein, whether in storage on or off the site, under the care, custody or control of the Contractor or any of his Subcontractors or Sub-sub-contractors" (§ 10.2.1). It is also the contractor who "shall give all notices and comply with all applicable laws, ordinances, rules, regulations and lawful orders of any public authority bearing on the safety of persons or property or their protection from damage, injury or loss" (§ 10.2.2). Section 10.2.3 mandates that the contractor "erect and maintain, as required by existing conditions and progress of the Work, all reasonable safeguards for safety and protection". The next clause, section 10.2.6, directs the contractor to "designate a responsible member of his organization at the site whose duty shall be the prevention of accidents". Section 10.2.7 prohibits the contractor from loading or permitting any portion of the work to be loaded "so as to endanger its safety."

In contrast, the owner of the building may contractually stop or carry out the work only in the event of a default or if the contractor's performance is defective or nonconforming (§§ 3.3, 3.4). The owner certainly does not have the contractual authority to direct, supervise or control the work or the manner in which it is discharged and, in fact, the evidence shows that L.H.L. Realty at no time ever exercised, or attempted to exercise, any oversight over the actual conduct of the work. Yet, defendants contend that because L.H.L. Realty

was the owner of the premises on the date of the incident, it could be held strictly accountable under sections 241 (6) and 241-a of the Labor Law, citing *Zimmer v Chemung County Performing Arts* (65 NY2d 513). In that respect, Labor Law § 241 states that "[a]ll contractors and owners and their agents * * * when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements * * *. (6) All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places." Section 241-a of the Labor Law requires that workmen "in or at elevator shaftways, hatchways and stairwells of buildings in course of construction or demolition shall be protected by sound planking at least two inches thick laid across the opening". In addition, there is Labor Law § 200, which relates to the general duty to protect the health and safety of employees.

The Court of Appeals has held that while "[s]ection 200 of the Labor Law merely codified the common-law duty imposed upon an owner or general contractor to provide construction site workmen with a safe place to work" *(Russin v Picciano & Son,* 54 NY2d 311, 316-317; *see also, Allen v Cloutier Constr. Corp.,* 44 NY2d 290), section 241 imposes a nondelegable duty on owners and contractors to conform to the mandates of that statute *(Russin v Picciano & Son, supra; Allen v Cloutier Constr. Corp., supra).* The Court of Appeals, in discussing its prior decision in *Allen v Cloutier Constr. Corp. (supra),* explained that "the thrust of *Allen* was that 'ultimate responsibility' or 'absolute liability' or 'nondelegability' of the duty of an owner or general contractor under subdivision 6 of section 241, whatever the niceties of its articulation, was unavoidable only in the sense that it could not be delegated to another rather than, as the majority of the Appellate Division mistakenly assumed, that the owner or general contractor would not be allowed to raise any defense to the imposition of liability" *(Long v Forest-Fehlhaber,* 55 NY2d 154, 159-160).

In *Zimmer v Chemung County Performing Arts (supra,* at 520), the Court of Appeals noted that "the legislative history of the Labor Law, particularly sections 240 and 241, makes clear the Legislature's intent to achieve the purpose of protecting workers by placing 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor'

\* \* \* instead of on workers, who 'are scarcely in a position to protect themselves from accident' ''. Accordingly, these statutes do not permit the worker's contributory negligence to be asserted as a defense, and "a violation of such a statute is conclusive evidence of negligence" *(Zimmer v Chemung County Performing Arts, supra,* at 521). Thus, " 'ultimate liability' under section 241 (6) was 'unavoidable' only in the sense that it could not be delegated to another and not in the sense that it precluded and owner or contractor from raising any defense to the imposition of liability" *(Zimmer v Chemung County Performing Arts, supra,* at 521-522). Although an owner or contractor may, therefore, not shift to its laborers the responsibility for providing a safe workplace, and would be held liable for a violation thereof regardless of the issue of control of the work, there is no legal authority for the proposition that as between owners, contractors and subcontractors, liability will be imposed irrespective of who was, in fact, negligent and whether or not the owner possessed any supervision or control over the actual construction *(see, Gallo v Supermarkets Gen. Corp.,* 112 AD2d 345, *lv denied* 66 NY2d 605). Ultimately, the parties actually responsible for the accident will be held accountable for it *(see, Nagel v Metzger,* 103 AD2d 1). Since the evidence at trial in this case was insufficient to support a finding that L.H.L. Realty was in any way negligent, and its liability was vicariously predicated solely on its nondelegable duty under the Labor Law, L.H.L. was entitled to be indemnified from its codefendant Nagar, which was the party actually at fault *(Glielmi v Toys "R" Us,* 62 NY2d 664; *Allen v Cloutier Constr. Corp., supra),* and that portion of the judgment directing L.H.L. Realty to pay $120,000 to the Nagar defendants must be vacated. Concur—Murphy, P. J., Ross, Milonas, Ellerin and Rubin, JJ.