■ FREDERICK G. LEDOGAR III, Appellant, v JOHN J. GIORDANO et al., Respondents, et al., Defendants.—In an action to recover damages for personal injuries based on medical malpractice, the plaintiff appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Suffolk County (Gerard, J.), entered June 27, 1984, as (1) upon a posttrial motion for judgment notwithstanding the verdict (CPLR 4404 [a]), is in favor of the defendants Grieco, Sabinsky, and Church Charity Foundation of Long Island, sued herein as St. Johns Episcopal Hospital-Smithtown (hereinafter the hospital), and against him, and (2) upon a jury verdict, is in favor of the defendants Ferlazzo and Giordano and against him.

Judgment modified, on the law and on the facts, by deleting the provision thereof which granted the posttrial motion to set aside the jury verdict as to liability with respect to the defendants Grieco, Sabinsky and the hospital, and substituting therefor a provision denying that motion and reinstating the jury verdict as to liability and the apportionment of fault as between the defendants Grieco, Sabinsky and the hospital. As so modified, judgment affirmed, without costs or disbursements, and matter remitted to the Supreme Court, Suffolk County, for a new trial on the issue of damages only.

The complaint alleges that the plaintiff who was born at the hospital in Smithtown on June 4, 1969, suffered severe and permanent personal injuries as the result of the negligence of the various named defendants. The evidence presented at trial established that the infant's mother was cared for by the defendant Dr. John Giordano, an obstetrician, from the time that her labor pains began at 11:45 A.M., until approximately 5:45 P.M. that afternoon. At that time, the codefendant Dr. Julius Grieco, also an obstetrician, took over the care of Mrs. Ledogar, and treated her until 10:25 P.M., at which time Dr. Giordano performed a Caesarean section. The infant was delivered at about 11:00 P.M.

The testimony presented at trial further reveals that the plaintiff was suffering from hypoxia (a diminished amount of oxygen in the blood which can cause brain damage) at the time of his birth. A pediatrician, the defendant Dr. Albert Sabinsky, suctioned the baby's mouth and nose and applied "positive pressure oxygen". However, after Dr. Sabinsky had left the hospital, the infant turned "ashen" and then "black" while in the nursery. The newborn infant again turned blue on the third day of its life.

At trial, it was the plaintiff's contention that due to prenatal hypoxia, he suffered brain damage which resulted in his affliction with a medical condition known as autism. The jury found that this condition was, in fact, caused by the negligence of Dr. Grieco, Dr. Sabinsky, and the hospital, and fault was apportioned among these three defendants. Dr. Giordano was found to have been negligent, but the jury determined that his negligence was not a proximate cause of any injury. A codefendant anesthesiologist was found not negligent. Damages were fixed in the amount of $600,000.

Upon a posttrial motion, the court, from the Bench, declared that the verdict was against the weight of the evidence. However, rather than order a new trial, which is the proper

course in such a case (CPLR 4404 [a]; *Nicastro v Park,* 113 AD2d 129), the court, in the judgment that was finally entered, dismissed the plaintiff's complaint. This appeal followed. We modify the judgment so as to reinstate the jury's verdict as to liability, and so as to order a new trial on the issue of damages only.

The defendants who were found liable by the jury argue, primarily, that the record does not contain sufficient proof of causation to support the verdict. We disagree.

The courts have repeatedly observed that the issue of causation in a medical malpractice case can be particularly difficult *(see, Matott v Ward,* 48 NY2d 455, 461-462; *Toth v Community Hosp.,* 22 NY2d 255, 261; *Mertsaris v 73rd Corp.,* 105 AD2d 67, 82).* Unless a causal connection would be readily apparent to the jury, it is necessary to present expert testimony as to whether the defendant's alleged negligent acts or omissions caused the plaintiff's injuries *(see, e.g., Amsler v Verrilli,* 119 AD2d 786; *Minardo v Estate of Mussio,* 116 AD2d 701; *Weiss v Zuckerman,* 114 AD2d 895). There was such expert testimony in this case.

First, an expert obstetrician testified for the plaintiff that both the defendant obstetricians were negligent in failing to perform a Caesarean section at an earlier time. He also testified that the hospital staff departed from proper medical standards of care in not monitoring the fetal heartbeat at least every 15 minutes. This expert also testified, with a reasonable degree of medical certainty, that it was probable that the fetus suffered hypoxia during labor. Although a prenatal hypoxic event was never detected, this was the result, according to the plaintiff's expert, of the hospital's failure to monitor the fetal heartbeat. If there had been proper monitoring, fetal distress would have been noted and an earlier Caesarean section would have been indicated. Thus, causation was established as to the defendant hospital.

We also find that the element of causation was established with respect to the alleged negligence of Dr. Grieco, and that there is no inconsistency reflected by the jury's having found an absence of causation with respect to Dr. Giordano. Dr. Grieco took charge of the patient later in the day, and the evidence permits the inference that the prenatal hypoxic event was more likely to have occurred later rather than earlier in labor. The jury could rationally have concluded that, although both obstetricians negligently delayed the operation, the injury-producing event occurred while Dr. Grieco

was responsible for the care of the patient. Thus, the verdict is not logically inconsistent *(see, Tiernan v Heinzen,* 104 AD2d 645).

The verdict against the pediatrician, Dr. Sabinsky, is also supported by the evidence. There was competent testimony to the effect that Dr. Sabinsky should have intubated the newborn child, rather than apply "positive pressure oxygen", and that as a result of this departure from good medical practice, mucous remained in the infant, causing a postnatal hypoxic event which the jury could find contributed to the infant's injuries.

It is also argued that the plaintiff failed to establish a causal connection between the alleged hypoxic events before and after his birth and the autistic condition from which he now suffers. This is also incorrect. The plaintiff called a neurologist with expertise on the subject of autism, who testified that if the infant had suffered significant hypoxia around the time of its birth, this would have been a substantial contributing factor in the etiology of the infant's autistic condition. That this witness did not himself recite that this opinion was based on a " 'reasonable degree of medical certainty' " *(Matott v Ward,* 48 NY2d 455, 462, *supra)* is no reason to discard his testimony, where it appears that " 'the doctor intend[ed] to signify a probability supported by some rational basis' " *(Matott v Ward, supra,* at p 461, quoting from *Matter of Miller v National Cabinet Co.,* 8 NY2d 277, 282).

Nor does the fact that this expert acknowledged that the plaintiff's autism could have had causes other than prenatal hypoxia warrant a finding, as a matter of law, that causation was not proved. A plaintiff is not obligated to eliminate all possibility that the injuries resulted from causes other than a defendant's negligence *(see, e.g., Vialva v City of New York,* 118 AD2d 701; *Mortensen v Memorial Hosp.,* 105 AD2d 151, 158; *Mertsaris v 73rd Corp., supra,* at pp 82-83). The jury's verdict on the issue of liability and apportionment of fault is supported by the evidence, and the court erred in setting that verdict aside.

Turning to the issue of damages, we find that the trial court erred as a matter of law in refusing to allow the jury to consider either (1) pain and suffering or (2) loss of future earnings, in determining a fair measure of compensation for the plaintiff. It is now settled that loss of future earnings is a proper item of damages, even for an infant plaintiff *(see, Barrette v Good Samaritan Hosp.,* 115 AD2d 582; *Sentowski v Boulevard Hosp.,* 109 AD2d 878; *Beardsley v Wyoming County*

*Community Hosp.,* 79 AD2d 1110). Also, the record supports the conclusion that there is a certain degree of pain and suffering associated with the plaintiff's autistic condition. It is not necessary for the infant to be able to fully appreciate the consequences of his injury or to verbalize his pain *(see, Tinnerholm v Parke, Davis & Co.,* 411 F2d 48). Also, the jury may properly consider the effect that the plaintiff's injuries had on the normal pursuits and pleasures of life as part of the pain and suffering component of damages *(see, Lebrecht v Bethlehem Steel Corp.,* 402 F2d 585, 592; Ann., 34 ALR4th 293). Since the court erroneously refused to charge the jury with respect to these aspects of damages, a new trial is warranted, limited to this issue. Mollen, P. J., Rubin, Eiber and Kooper, JJ., concur.