**Jacob E. COWE, by Ann COWE, Parent and Guardian, Appellant (Plaintiff Below),**

v.

**FORUM GROUP, INC., Appellee (Defendant Below).**

No. 41A04–8810–CV–332.

Court of Appeals of Indiana, Fourth District.

Aug. 2, 1989.

Rehearing Denied Sept. 20, 1989.

Dennis V. Panarisi, Marion, for appellant.

John T. Murphy, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee.

CHEZEM, Judge.

## Case Summary

Appellant Jacob Cowe, appeals the granting of appellee's, Forum Group, Inc's., motion for summary judgment on Issue IV of his complaint.

We reverse.

## Issue

I. Whether there was a genuine issue of material fact regarding the liability of Forum Group for the support of Jacob Cowe or for the failure to provide prenatal care of Jacob Cowe.

## Facts

Melanie Meredith is a profoundly retarded adult who is unable to speak and has no muscle control. She requires complete custodial care. During the relevant time, Melanie was a resident of and in the care of the Riverview Manor Nursing Home and was approximately 34 years old. Riverview Manor is a private nursing home in Marion, Indiana, owned by Forum.

During July or August of 1985, Melanie conceived a child and on March 25, 1986, she delivered a son, Jacob E. Cowe. Jacob was subsequently adopted by Ann Cowe who is currently his parent and guardian.

Another resident of Riverview Manor, Wayne Anthony Morgan, admitted he had sexual intercourse with Melanie more than once during July or August of 1985. Wayne was charged with rape and subsequently pleaded guilty but mentally ill to the offense. Jacob contends that he is the son of Melanie and Wayne, however, Forum does not concede to such contention.

Jacob's complaint originally contained six counts and included four plaintiffs: Melanie Meredith, Jacob E. Cowe, and Richard and Violet Meredith, Melanie's parents. On February 8, 1988, Forum filed a motion for summary judgment against all plaintiffs and on May 10, 1988, the motion was granted against counts II–V and all plaintiffs, save Melanie.

Jacob filed a motion to correct errors for his claims which were in count IV of the complaint. The trial court denied his motion on September 8, 1988. Jacob now appeals that ruling.

## Discussion

Jacob appeals count IV *only; therefore,* any arguments against summary judgment for counts II, III, and V are waived.

We note that, because the trial court did not grant Forum's motion for summary judgment on count I of the complaint, count I survives for trial. Count I included Melanie's prayer for relief due to Forum's negligent care: failing to protect her from rape, sexual assault, battery, and abuse. Melanie seeks damages for physical injuries, hospital expenses incurred during her pregnancy, pain and suffering, and compensatory and punitive damages. Any damages possibly awarded to Melanie will in no way inure to Jacob.

When deciding whether summary judgment is appropriate the trial court must accept as true all facts alleged by the nonmoving party and resolve all doubts against the moving party. To determine whether summary judgment is appropriate, we must decide whether any genuine issues of material fact exist and whether the moving party is entitled to a judgment as a matter of law. Ind. Rules of Trial Procedure Rule 56(C); *English Coal Co., Inc. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302. Also, "a defendant seeking summary judgment must demonstrate [that] the undisputed material facts negate at least one element of the plaintiff's claim. This is true even where, as here, the plaintiff would have the burden of proof at trial." *McCullough v. Allen* (1983), Ind.App., 449 N.E.2d 1168; *Sanders v. Townsend* (1987), Ind.App., 509 N.E.2d 860, 862. Therefore, once the nonmoving party, Jacob, has pleaded and alleged all the elements of his cause of action (as Jacob has done) the defendant and moving party, Forum, has the burden of setting forth evidence showing that at least one element of Jacob's claim is undeniably nonexistent.

Neither Forum, as the moving party, nor Jacob, in resisting the motion for summary judgment, has filed supporting affidavits, depositions, answers to interrogatories, admissions, affidavits, or testimony. The par-

ties are relying solely upon pleaded matters.

A fact is material for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiffs' cause of action. *Delk v. Board of Com'rs. of Delaware County* (1987), Ind. App., 503 N.E.2d 436. In reviewing a motion for summary judgment, we stand in the position of the trial court and consider the same matters. *Moll v. South Central Solar Systems* (1981), Ind.App., 419 N.E.2d 154.

With respect to the case at hand, Indiana Code 34-1-1-11 states that "no person shall maintain a cause of action or receive an award of damages on his behalf based on the claim that but for the negligent conduct of another he would have been aborted." On first impression this statute seems to suggest that no wrongful life cause of action could exist for Jacob. However, a more accurate interpretation would be that to disallow Jacob's cause of action, Jacob must be arguing that he would have or should have been aborted. Jacob is claiming no such thing. Rather, Jacob contends that but for Forum's negligence he would not have been conceived. This is quite different than arguing that but for Forum's negligence he would have been aborted. Now that he has been conceived and born, Jacob contends that Forum owes him damages for its negligent conduct.

Jacob's claim is based on imputed paternity, wrongful life, negligence, and prenatal tort. Jacob argues that Forum is obligated to pay his support until he reaches 21 years of age. We note that if Jacob is allowed to recover support we would limit Jacob's claim for support because Jacob has been legally adopted by Ann Cowe. Once Jacob was adopted, any and all responsibility for Jacob's well-being, financial and otherwise, was laid upon the shoulders of Jacob's adoptive parent. Indiana Code 31-3-1-9 makes this clear:

> After such adoption such adopting father or mother or both ... shall be jointly and severally liable for the maintenance and education of such person. *Id.*

In addition, any responsibilities of the natural parents cease:

> The natural parents of such adopted person ... shall after such adoption be relieved of all legal duties and obligations due from them to such person and shall be divested of all rights with respect to such person ...

*Id.* Therefore, if Jacob recovers support as damages, he may only recover support for the unspecified time between his birth and his adoption.

## I

We find no merit to the claim of imputed paternity. The paternity of Jacob is not at issue; this is not a paternity action. The record does not reflect that a paternity action was previously instituted to establish Wayne as Jacob's father. Wayne has no duty to support an illegitimate son unless and until his paternity is established by law. *See, Farmer v. Minor* (1986), Ind.App., 495 N.E.2d 553, 556.

## II

Jacob's second theory for relief is a wrongful life action. A wrongful life claim has not yet been recognized in Indiana; however, California, New Jersey, and Washington recognize wrongful life actions. Wrongful life refers to a cause of action brought by or on behalf of a child where the child does not allege that a physician's negligence caused the child's deformity. Rather, the claim is that but for the negligent conduct of the physician, the child would not have been born to experience the pain and suffering attributable to the deformity. *Harbeson v. Parke–Davis, Inc.* (1983), 98 Wash.2d 460, 656 P.2d 483, 494. *Harbeson* continues and expands the definition of the action to include "negligent performance of a procedure intended to prevent the birth of a defective child: sterilization or abortion." According to I.C. 34-1-1-11, *supra*, Indiana statutory law could not allow the inclusion of an ineffective abortion as a wrongful life claim. However, we can and do approve the remainder of the definition of a wrong-

ful life cause of action presented in *Harbeson*.

■ We would also expand the wrongful life cause of action to encompass Jacob's unusual situation. We now recognize a wrongful life cause of action to include a situation where, as in Jacob's case, both parents are so severely mentally or physically impaired as to render them incapable of affirmatively deciding to have a child or to care for a child and where but for the custodian's negligent care of both parents, the child would not have been conceived.

We agree with the general view expressed in *Procanik by Procanik v. Cillo*, (1984) 97 N.J. 339, 478 A.2d 755, 763, which suggests that we need not become preoccupied with the metaphysical consideration of whether a defective life is worth less than no life at all. Our decision to allow a wrongful life cause of action is predicated on the needs of the living. Jacob was born alive and lived a period of time without a parent to support him. Forum's negligence was allegedly the proximate cause of Jacob's situation.

### III

Jacob's third theory is negligence. We find no Indiana case law on point; instead we will refer to analogous cases. *Garrison v. Foy* (1985), Ind.App., 486 N.E.2d 5, establishes for parents a wrongful pregnancy cause of action in Indiana. The facts in *Garrison* are not similar to the case at hand; however, the policy considerations are.

As in any other negligence action, Jacob must allege the existence of the three elements of negligence: (1) a duty on the part of Forum; (2) a breach of or failure to perform that duty; and (3) damages or injuries proximately resulting to Jacob. *Garrison, supra* at 7 and 8. For purposes of summary judgment, once Jacob alleges the elements of negligence, Forum has the burden of presenting evidence that at least one of these elements do not exist.

■ Jacob alleges that Forum had a duty to protect Melanie from rape and to diagnose her pregnancy (thereby realizing Jacob's existence). This duty stems from Forum's duty to provide a reasonable standard of care under the circumstances—circumstances which include Melanie's mental and physical condition.

As a matter of law, Forum had a duty to provide reasonable care under the circumstances, and, as a business invitor, Forum owed a higher duty to Melanie as an invitee. *Gaboury v. Ireland Road Grace Brethren, Inc.* (1983) Ind., 446 N.E.2d 1310, 1314. Whether or not this higher duty includes preventing a rape and realizing Melanie was pregnant is a question of fact and thus a matter for the jury to decide. If such facets of reasonable care are found, then Forum did breach its duty. This also remains for the finder of fact to decide.

■ The third issue of Jacob's negligence action is whether a breach of such duty proximately caused Jacob's injury. Jacob contends that it did. Forum argues that any alleged chain of causation was broken by Wayne's intervening criminal act of rape. This is also a question of fact, as stated in *Estate of Mathes v. Ireland* (1981), Ind.App., 419 N.E.2d 782, 785, and therefore a question for the finder of fact, not an issue to be determined on summary judgment. Discussing proximate cause and a criminal act of a third party in a mental healthcare center, *Mathes* states:

> ... if the centers ... had actually taken charge of Pierce within the meaning of Sec. 319 Restatement (Second) of Torts as alleged in the complaint, and additionally had actual knowledge that Pierce was extremely dangerous, again as alleged in the complaint then we think they were bound to exercise reasonable care under the circumstances. If they did not, sufficient causation could exist. (omitting cites)

*Id.*, at 785.

As in *Mathes*, Jacob alleges that Forum was aware of Wayne's aggressive, sexual behavior and that Forum had control over both Wayne and Melanie. Forum disputes this issue and the foreseeability of Wayne's intervening criminal conduct, thus result-

ing in a genuine issue of material fact for the finder of fact.

Forum has also argued that the birth of Jacob was not foreseeable. If, however, Wayne's sexual behavior was foreseeable, then surely the natural and proximate result of repeated sexual intercourse with a fertile 34 year old woman is pregnancy and subsequent birth of a child.

The final issue is damages. To prevail on summary judgment, Jacob must have alleged that damages exist. He has. If Jacob had no damages, then none of the foregoing issues of fact would be material to the outcome of this case.

■ One area of damages is child support. In *Garrison, supra,* this court held that the parents in a wrongful pregnancy action could not recover support from the negligent doctor. However, the policy reasons preventing recovery referred to in *Garrison* do not exist in this case. In *Garrison,* we stated that allowing the parents to keep their child in addition to collecting child support would unduly benefit the parents and penalize the negligent healthcare provider. *Garrison, supra,* at 8. This policy consideration is not relevant here because Melanie was not able to keep her child nor would she have been responsible for Jacob's financial well-being; Melanie would not benefit at all from Jacob's existence. Nor would Forum be unduly burdened because the amount of support would be relatively small. Since Jacob was adopted at least by July, 1986, if not sooner, support would be for less than a year.

■ Another area of damages is compensation for physical injury. The record was supplemented at our request to include a medical report, # 142 (R. 276), which was itemized in a request for admissions but not reproduced in the original record presented to this court. This document includes a discussion of Melanie's physical examination while pregnant with Jacob and states that "the fetus [Jacob] is at a 10% risk for Fetal Hydantoin Syndrome." This evidence is conclusive that Jacob has or had a chance of physical injury due directly to Forum's negligence in prescribing and administering the drug Dilantin to Melanie

while Jacob was *in utero.* This medical report puts at issue whether Jacob was physically injured, and Forum provided no evidence that Jacob was not so injured. Therefore, summary judgment is not appropriate on this issue.

■ *Garrison* next discusses the possibility that under comparative fault, the parents may have a duty to mitigate their damages by terminating the pregnancy. Even if such a rule could be applied, Melanie was unable to discover her own pregnancy. Forum was responsible for her care and only Forum had the ability to discover Melanie's pregnancy, but failed to do so until the fifth month of pregnancy. However, as *Garrison* notes, any duty to terminate a pregnancy would conflict with Indiana's policy to prefer life over termination of life, *see* I.C. 16–10–3–4 and *Garrison, supra,* at 9, and therefore could not be required.

■ For purposes of summary judgment under the theories of wrongful life and negligence, material facts remain at issue regarding Forum's liability to support Jacob from birth until his adoption, therefore summary judgment was inappropriate.

### IV

■ The final cause of action also sounds in negligence: Prenatal tort. May Forum be held liable for negligently failing to diagnose or recognize Melanie's pregnancy and therefore failing to provide prenatal care to Jacob? Once again, since this is a summary judgment ruling, we must decide whether there is a genuine issue of material fact.

No Indiana case law has thus far recognized an infant's cause of action for prenatal injury. However, several other states have. *See* 40 A.L.R.3d 1222. We look to Florida law to establish and state such a cause of action:

> ... a child born alive, having suffered prenatal injuries at any time after conception, has a cause of action against the alleged tortfeasor.

*Day v. Nationwide Mutual Insurance Co.* (1976), Fla.App., 328 So.2d 560, 562; *Duncan v. Flynn* (1977), Fla.App., 342 So.2d 123, 127.

 Now establishing a cause of action for prenatal injury, we proceed with the negligence analysis. Jacob alleges that Forum breached its duty to detect Melanie's pregnancy, therefore his existence, and that Forum's breach caused him injury. Forum disputes these claims.

We established earlier that Forum owed Melanie a duty of reasonable care. Whether or not that duty reasonably encompassed recognizing she was pregnant and then providing prenatal care for her and her child is, once again, for the finder of fact to decide. Restated, the exact care to be provided under the duty to provide reasonable care is a question of fact. Jacob alleges that the duty does include this and Forum alleges that it does not; this reveals an issue of material fact.

The next aspect of negligence is whether the duty was breached. If, indeed, Forum should have detected the pregnancy and failed to do so, then that duty was breached. The result rests on what the finder of fact decides was encompassed by the duty to provide reasonable care.

As stated earlier, Jacob has provided evidence that a possible injury exists, i.e., a 10% chance of Fetal Hydantoin Syndrome. Jacob argues that his resultant injury was proximately caused by Forum's breach. If Forum did breach its duty to provide reasonable care, by failing to detect the pregnancy, then Jacob's injury could have been proximately caused by such a breach; that remains to be shown at trial. It is foreseeable that an injury may result from failure to provide prenatal care.

For purposes of summary judgment, material facts remain at issue, therefore, summary judgment was inappropriate regarding recovery of damages for injury sustained as a direct result of failure to re-

ceive prenatal care in the first five months of Jacob's fetal life.

Therefore, we reverse the trial court's entry of summary judgment on Count IV of the complaint and remand for trial on the merits in accordance with this opinion.

CONOVER, P.J., concurs with separate opinion.

RATLIFF, C.J., dissents with separate opinion.

CONOVER, Presiding Judge, concurring.

While I concur in all things with the majority opinion, I believe it necessary to expand on its discussion of the damages available to Jacob based on his common law negligence count. In addition to the damages acknowledged by the majority, Jacob is also entitled to recover for his mental pain, suffering and anguish based on any diminished quality of life he may suffer from being the genetic off-spring of mentally deficient parents. Additionally, I believe Jacob could seek to recover any extraordinary medical expenses attributable to Fetal Hydantoin Syndrome or other physical injury caused by Forum's negligence.

With regard to damages for a diminished quality of life, I believe any person who is the direct result of a sexual union which occurs without the knowing and intelligent consent of both parents, whether that union was due to violence (i.e. rape, incest, child molesting, etc.) or otherwise, has an unqualified right not to be born under such circumstances which pre-exist conception. However, once conceived under such circumstances, the resulting child has the right to be born possessing at least normal intellectual and physiological capabilities. Any adverse variance from normal functioning levels in the person born because of such union should be considered a diminished quality of life for which damages may be recovered.[1] Consequently, when an in-

1. In *Kavanaugh v. Nussbaum* (1987), 129 A.D.2d 559, 564, 514 N.Y.S.2d 55, 59, the New York Supreme Court, Appellate Division, stated:
 ... although there is no evidence that the infant plaintiff is capable of fully appreciating

the consequences of his injuries, or that he is presently conscious of his pain, an award for pain and suffering may be based on the effect that the injuries had upon the infant plaintiff's

voluntary conception proximately results from the negligence of a person having a duty to prevent it, the child thus produced should have the right to recover damages from the negligent party for the pain and suffering caused him by his impaired existence.[2] This right survives an adoption because it is personal to the child. The measure of damages should be the pain, suffering, and anguish the child has to date and reasonably will suffer throughout his lifetime as the result of his diminished quality of life. This accords with the traditional method of awarding damages in tort cases on the basis of a comparison between the position the plaintiff would have been in had the defendant not committed the act which caused the injury, and the position in which the plaintiff presently does and in the future will find himself.

As applied to the present case, if the trier of fact should determine Forum's negligence proximately resulted in Jacob's birth, I believe Jacob has a personal right to recover damages from Forum for any mental or physical deficiency proximately resulting from his involuntary conception in addition to those damages mentioned in the majority opinion. Clearly, if Forum is found to have breached its duty to protect Melanie from involuntary conception, Forum should be held responsible for the damages Jacob reasonably will incur as a result of his diminished quality of life, if any. While it is true a person cannot generally recover damages for mental suffering unless he sustains physical injury, I

believe Jacob experienced sufficient physical trauma to recover. Given his personal right not to be born under such circumstances, his conception as a proximate result of Forum's negligence constitutes the required trauma and injury, however slight. There is no requirement the contemporaneous physical injury be severe to support the diminished quality of life claim; a causal connection is all that is mandated. *Kroger Co. v. Beck* (1978), 176 Ind.App. 202, 375 N.E.2d 640, 643–644.

The measure of such damages may be difficult to calculate. However, mental pain and suffering, like physical pain and suffering, is compensable without offering specific evidence as to monetary values. *Grubbs v. U.S.*, 581 F.Supp. 536, 542 (D.C. Ind.1984).

Also as to extraordinary medical expenses, I believe Jacob should be permitted to seek damages for those attributable to Fetal Hydantoin Syndrome or other physical injury proximately resulting from Forum's negligence. In cases such as the present one, either the child or his parents should be able to recover special damages for extraordinary medical expenses incurred during infancy and the child should recover those expenses during his majority. *Procanik v. Cillo* (1984), 97 N.J. 339, 478 A.2d 755, 762. *See also Harbeson v. Parke–Davis, Inc.* (1983), 98 Wash.2d 460, 656 P.2d 483, 495.

For those reasons, I concur in the result reached by the majority.

ability to enjoy the normal pursuits and pleasures of life.

Upon review, the Court of Appeals of New York did not review the issue because the "lost enjoyment of life" was not presented as an element to the jury at trial. See *Kavanaugh v. Nussbaum* (1988), 71 N.Y.2d 535, 528 N.Y.S.2d 8, 14, 523 N.E.2d 284, 290. Further, in *Ledogar v. Giordano* (1986), 122 A.D.2d 834, 838, 505 N.Y.S.2d 899, 903, the New York Supreme Court, Appellate Division, held the jury could properly consider the effect the child's injuries had on the normal pursuits and pleasures of life as part of the pain and suffering component of damages. *See also Lebrecht v. Bethlehem Steel Corp.* (1968), 402 F.2d 585, 592, in which the United States Court of Appeals held the jury may consider the effect of the plaintiff's injuries on the normal pursuits and pleasures of life.

**2.** In *Pitre v. Opelousas General Hosp.* (1988), La., 530 So.2d 1151, the Louisiana Supreme Court held a physician owes a duty to exercise reasonable care in assisting potential parents to avoid the conception of a deformed child. The court stated:

... each person owes a duty to take reasonable care to avoid acts or omissions which he can reasonably foresee would be likely to injure a present or future member of society ...

*Id.* at 1157. The court went on to state logic dictates we recognize a legal duty to a child not yet conceived but foreseeably harmed by the negligent delivery of health care services to the child's parents. *Id.* The reasoning underlying this holding may be applied to the case at bar.

RATLIFF, Chief Judge, dissenting.

It is important to keep in mind that in this case we are not considering any claim which Melanie Meredith might have against Forum Group, Inc., for any negligent breach of its duty to her and for any injuries she received as a proximate result of such breach. Rather, here we are concerned only with Jacob Cowe's claim in Count IV of the complaint wherein recovery is sought for his "medical attention, care, support, maintenance and education until he attains the age of twenty-one (21)." Record at 7. The majority would allow recovery for support from the date of his birth until his adoption by Ann Cowe, and for damages resulting from injuries proximately caused by Forum's failure to provide proper prenatal care. In addition, the concurring opinion would allow recovery by Jacob for his mental pain, suffering and anguish based upon any diminished quality of life he may suffer as the offspring of mentally deficient parents, and for extraordinary medical expenses attributable to any injury or deformity resulting from Forum's negligence. For reasons hereinafter stated, I must dissent from each of all of these positions.

The majority finds bases for recovery in this case upon theories of (1) wrongful life, (2) negligence, and (3) prenatal tort. In my opinion, none of these theories supports the majority decision.

## I. WRONGFUL LIFE

The majority recognizes that wrongful life claims have not yet been recognized in Indiana, but notes that cases from California,[1] Washington, and New Jersey have recognized such claims. *Harbeson v. Parke–Davis, Inc.* (1983), 98 Wash.2d 406, 656 P.2d 483; *Procanik v. Cillo* (1984), 97 N.J. 339, 478 A.2d 755. Neither *Harbeson* nor *Procanik* is factually similar to this

case, and, therefore, neither supports the majority decision as will be demonstrated by a later discussion of these cases.

In fact, it is difficult to discern the majority's wrongful life analysis. Citing *Harbeson,* the majority says "[w]rongful life refers to a cause of action brought by or on behalf of a child where the child does not allege that a physician's negligence caused the child's deformity. Rather, the claim is that but for the negligent conduct of the physician, the child would not have been born to experience the pain and suffering attributable to the deformity." At 965. The majority then expands the wrongful life cause of action to include a situation where, as here, "both parents are so severely mentally or physically impaired as to render them incapable of affirmatively deciding to have a child or to care for a child and where but for the custodian negligent care of both parents, the child would not have been conceived." At 966. This is but another way of saying but for the negligence of Forum, Jacob would not have been born, and the fact of his birth constitutes an injury to him. I cannot subscribe to such a view.

The Supreme Court of Illinois in *Siemienic v. Lutheran General Hospital* (1987), 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691, rejected a claim for wrongful life by a genetically impaired child (hemophilia) against medical professionals whose negligent failure to predict or diagnose the defect was the proximate cause of his birth and having to live in an impaired condition, and noted that the overwhelming majority of jurisdictions have rejected such claims. *Id.* 111 Ill.Dec. at 307, 512 N.E.2d at 696. In *Azzolino v. Dingfelder* (1985), 315 N.C. 103, 337 S.E.2d 528, *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75, the Supreme Court of North Carolina reached the same result.[2]

---

**1.** No California case is cited by the majority. It is assumed that the majority has reference to *Turpin v. Sortini* (1982), 31 Cal.3d 220, 643 P.2d 954, 182 Cal.Rptr. 337.

**2.** In *Siemienic,* although rejecting the child's wrongful life claim, the Illinois court recognized a "wrongful birth" claim by the parents,

but limited recovery to the extraordinary medical expenses incurred or to be incurred on behalf of the child because of his defective condition. North Carolina in *Azzolino,* rejected the wrongful birth claim also. Here, we are not concerned with any wrongful birth claim brought by Melanie and need not address.

Both the Illinois and North Carolina courts recognize that traditional tort liability concepts break down in the wrongful life cases. Assuming *arguendo,* Forum owed a duty *in utero* to Jacob, traditional tort concepts require an injury to him as a necessary predicate to liability. Thus, unless his very being is an injury, there is no basis for recovery.

Courts generally have been unwilling to hold that a child can recover damages for achieving life. "Resting on the belief that human life, no matter how burdened, is, as a matter of law, always preferable to non-life, the courts have been reluctant to find that the infant has suffered a legally cognizable injury by being born with a congenital or genetic impairment as opposed to not being born at all." (Citations omitted). *Siemienic,* 111 Ill.Dec. at 308, 512 N.E.2d at 697. Stated differently, in the words of *Azzolino,* "life, even life with severe defects, cannot be an injury in the legal sense." 337 S.E.2d at 532.

Indeed the essence of Jacob's claim, as asserted in paragraph 6 of Count IV of the complaint, is that he "is owed a duty of support by [Forum] because its negligence proximately caused his birth into a world in which there was no natural parent capable of caring for and supporting him." Record at 7. This is the very essence of the concurring opinion's view that Jacob had an unqualified right not to be born under such circumstances. Such a view not only finds no support in case law but is contrary to the public policy of this state as declared by our legislature in Indiana Code section 34-1-1-11 which provides that "[n]o person shall maintain a cause of action or receive an award of damages on his behalf based on the claim that but for the negligent conduct of another he would have been aborted."

The second break-down on the application of traditional tort liability concepts is the impossibility of measuring appropriate damages. *Siemienic,* 111 Ill.Dec. at 308, 512 N.E.2d at 697; *Azzolino,* 337 S.E.2d at 533. Traditional tort remedy is compensatory. "Thus, the cause of action involves a calculation of damages dependent upon the relative benefits of an impaired life as opposed to no life at all, '[a] comparison the law is not equipped to make'" (citations omitted). *Siemienic,* 111 Ill.Dec. at 302, 512 N.E.2d at 691. Indeed, as the Court of Appeals of New York observed in *Becker v. Schwartz* (1978), 46 N.Y.2d 401, 411–12, 413 N.Y.S.2d 895, 900–01, 386 N.E.2d 807, 812, in a passage quoted in both *Siemienic* and *Azzolino:*

"Whether it is better never to have been born at all than to have been born with even gross deficiencies is a mystery more properly to be left to the philosphers and the theologians. Surely the law can assert no competence to resolve the issue, particularly in view of the very nearly uniform high value which the law and mankind has placed on human life, rather than its absence. Not only is there to be found no predicate at common law or in statutory enactment for judicial recognition of the birth of a defective child as an injury to the child; the implications of any such proposition are staggering. Would claims be honored, assuming the breach of an identifiable duty, for less than a perfect birth? And by what standard or by whom would perfection be defined?

\* \* \* \* \* \*

"Simply put, a cause of action brought on behalf of an infant seeking recovery for wrongful life demands a calculation of damages dependent upon a comparison between the Hobson's choice of life in an impaired state and nonexistence. This comparison the law is not equipped to make.... Recognition of so novel a cause of action requiring, as it must, creation of a hypothetical formula for the measurement of an infant's damages is best reserved for legislative, rather than judicial, attention."

In *Siemienic,* the Illinois Supreme Court observed that "no right not to be born, even into a life of hardship, has ever been recognized in our judicial system." 111 Ill.Dec. at 311, 512 N.E.2d at 700. The concurring opinion would have us recognize a right not to be born which no other court has done, and which our legislature has

rejected. The *Siemienic* court rejected the reasoning of the California, Washington, and New Jersey courts in *Turpin, Harbeson,* and *Procanik.*[3] I am persuaded by the reasoning of the Illinois court in *Siemienic* and by the North Carolina court in *Azzolino.*

Even if we were to accept the reasoning of *Harbeson* and *Procanik,* upon which the majority relies, Jacob Cowe would have no cause of action. In *Harbeson,* the mother of the children involved was an epileptic taking Dilantin. Her husband inquired of the physicians if taking such medication presented any risks during pregnancy and was advised that Dilantin could cause cleft palate an temporary hirsutism. Had the doctors searched the medical literature, they would have learned that many other serious birth defects could result. Harbesons had two additional children who were diagnosed as suffering from fetal hydantoin syndrome. These children suffer a number of serious birth defects including growth deficiencies, mental retardation, drooping eyelids, and other physical and developmental defects. The Washington court recognized both a "wrongful life" action for the children and a "wrongful birth" action for the parents, but limited recovery to the extraordinary medical expenses which would be incurred, and further providing there could be but one recovery.

In *Procanik,* the physicians were informed by the mother that she had had measles, but failed to conduct such tests as would have revealed recent rubella during the first trimester of her pregnancy. Ignorant of what an accurate diagnosis would have revealed, the mother allowed her pregnancy to continue and gave birth to a child born with multiple birth defects including eye lesions, heart disease, and hearing defects. The New Jersey court considered both the "wrongful life" and "wrongful birth" aspects of the case, and concluded the child could recover as special damages extraordinary medical expenses connected with his birth defects but could not recover general damages. The parents' claim for damages for emotional distress was rejected.[4]

In rejecting the child's claim for general damages, the New Jersey Supreme Court in *Procanik* said:

"Sound reasons exist not to recognize a claim for general damages. Our analysis begins with the unfortunate fact that the infant plaintiff never had a chance of being born as a normal, healthy child. Tragically, his only choice was a life burdened with his handicaps or no life at all. The congenital rubella syndrome that plagues him was not caused by the negligence of the defendant doctors; the only proximate result of their negligence was the child's birth.

"The crux of the problem is that there is no rational way to measure non-existence or to compare non-existence with the pain and suffering of his impaired existence. Whatever theoretical appeal one might find in recognizing a claim for pain and suffering is outweighed by the essentially irrational and unpredictable nature of that claim. Although damages in a personal injury action need not be calculated with mathematical precision, they require at their base some modicum of rationality.

"Underlying our conclusion is an evaluation of the capability of the judicial system, often proceeding in these cases through trial by jury, to appraise such a claim. Also at work is an appraisal of the role of tort law in compensating injured parties, involving as that role does, not only reason, but also fairness, predicability, and even deterrence of future wrongful acts. In brief, the ultimate decision is a policy choice summoning the most sensitive and careful judgment.

"From that perspective it is simply too speculative to permit an infant plaintiff to recover for emotional distress attendant on birth defects when that plaintiff

---

3. *Siemienic* contains a thorough discussion of the cases and commentaries regarding the so-called cause of action for wrongful life, and rejects such cause of action.

4. The parents "wrongful birth" action was denied because of the statute of limitations.

claims he would be better off if he had not been born. Such a claim would stir the passions of jurors about the nature and value of life, the fear of non-existence, and about abortion. That mix is more than the judicial system can digest...."

478 A.2d at 763.

This analysis by the *Procanik* court was accepted by the Washington court in *Harbeson.* Thus, both of the cases relied upon by Jacob deny recovery for general damages, for diminished quality of life, for support, but strictly limit recovery to extraordinary damages incurred by reason of the birth defects. More important, in both *Procanik* and *Harbeson,* the birth defects were known, specific, articulable defects which clearly resulted from the medical conditions of which the doctors negligently failed to apprise the parents.

In contrast, here there is no evidence that Jacob suffers from any known, specific birth defect. It was conceded at oral argument that the only evidence before the court in ruling on the summary judgment was Ann Cowe's statement that her pediatrician told her that perhaps he could tell if Jacob had any problems by the time he was five years old. Such hearsay statement could not be considered by the court in the summary judgment proceeding. Ind. Rules of Procedure, Trial Rule 56; *Interstate Auction Inc. v. Central National Ins. Group* (1983), Ind.App., 448 N.E.2d 1094. Further, the hearsay statement is speculative and insufficient to raise any factual issue.

The majority points to a medical report itemized in the request for admissions and included in the supplemental record stating that "the fetus is at a 10% risk for Fetal Hydantoin Syndrome." Record at 276. This is unavailing for two reasons. First, this evidence was not presented to the court at the summary judgment hearing. Materials not presented to the trial court in considering a motion for summary judgment may not be considered by an appellate court reviewing that decision. *Liberles v. County of Cook* (7th Cir.1983), 709 F.2d 1122; *Frank C. Bailey Enter-* *prises, Inc. v. Cargill, Inc.* (5th Cir.1978), 582 F.2d 333; *Munoz v. International Alliance of Thea. Stage Comp, Etc.* (1977), 563 F.2d 205. Second, the report was made prior to Jacob's birth and indicated a ten percent (10%) chance of Fetal Hydantoin Syndrome. Significantly, however, there is no medical evidence that Jacob suffers from any birth defect, disease, or disability. Therefore, no injury has been shown to exist and there can be no tort liability.

## II. NEGLIGENCE

As the majority recognizes, in order to succeed on a negligence theory, Jacob must establish three elements: (1) a duty owing on the part of Forum, (2) a breach of that duty, and (3) injuries to Jacob proximately caused by that breach. *Brown v. Conrad* (1988), Ind.App., 531 N.E.2d 1190. The majority, however, confused the issue of duty by discussing the duty owed to Melanie to protect her from rape and pregnancy. The majority never identified the duty owed to Jacob. Further, in discussing breach of duty, the majority again refers to the breach of the duty owed to Melanie. Even if one accepts the *Harbeson* court's holding that a duty can exist prior to conception, or that the duty owed to Melanie also can constitute a duty owed to Jacob, Jacob's action insofar as predicated upon negligence still must fail because of the failure to present any evidence of injury.

The majority cites our decision in *Garrison v. Foy* (1985), Ind.App., 486 N.E.2d 5, as supportive of its negligence analysis. How that is true escapes me. *Garrison* is a wrongful pregnancy case predicated upon a negligently performed vasectomy. However, it is indeed significant that *Garrison* rejected any recovery for the expenses of rearing the child, but limited recovery to the expenses of the pregnancy. Thus, *Garrison* points to no damages which could be recovered by Jacob.

## III. PRENATAL TORT

As the majority recognizes in its discussion of the prenatal tort aspect of Jacob's claim, this is a claim founded upon negligence. As such, the elements of duty,

breach of duty, and injury must be found to exist in order to support the claim. The problem here is that there is no evidence of any injury to Jacob, consequently he cannot succeed upon this theory. Therefore, it is unnecessary to consider whether such a tort should be recognized in Indiana. Rather, that determination should be left for another day when a case containing all of the required elements of a negligence action is presented. There is no medical evidence in this case that Jacob has suffered any injury. Thus, his prenatal tort action also must fail.

## IV. CONCLUSION

This case does not deal with any breach of duty to Melanie or with any questions of any liability to her. The question of the duty owed to Melanie and whether Forum met that duty likewise is not before us. Those are issues yet to be determined, and it would be inappropriate to make any statements concerning those issues. The sole question before us is whether Jacob has shown the existence of any genuine issue which would or could form the basis of any recovery by him on Count IV of the complaint. He has not. Therefore, I must dissent.