■ NANCY SMITH et al., Appellants, v LEE VOSBURGH et al., Defendants, and STERLING CHUDOW et al., Respondents.—In a medical malpractice action to recover damages for personal injuries, etc., the plaintiffs appeal from a judgment of the Supreme Court, Nassau County (Levitt, J.), entered January 11, 1989, which, upon rulings dismissing the complaint against the defendants Herzog and Chudow at the close of the plaintiffs' case and dismissing the complaint against the defendants Karafiol and North Shore University Hospital at the conclusion of the evidence, is in favor of the respondents and against them.

Ordered that the judgment is affirmed, without costs or disbursements.

In determining a motion for a judgment as a matter of law, the trial court's function "is not to weigh the evidence, but rather, 'in taking the case from the jury, to determine that by no rational process could the trier of facts base a finding in favor of the [plaintiff] upon the evidence * * * presented' " (Colozzo v Lo Vece, 144 AD2d 617, 618, quoting from Dooley v Skodnek, 138 AD2d 102, 104). Viewing the evidence in the light most favorable to the plaintiffs and resolving all ques-

tions of credibility in their favor (see, Alberti v St. John's Episcopal Hospital-Smithtown, 116 AD2d 612; Lipsius v White, 91 AD2d 271, 276-277), we find that the plaintiffs failed to produce sufficient evidence from which a reasonable person might conclude that any of the hospital staff's acts or omissions which may have constituted departures from the standards of medical care in the community were a proximate cause of the infant plaintiff's cerebral palsy.

The plaintiff mother, Nancy Smith, was admitted to the defendant hospital at about 11:15 A.M. on June 14, 1979, due to the onset of labor, and, at about 3:05 P.M. that day, the infant plaintiff was delivered by caesarian section. During that period, she was attended to by her own physician as well as by the residents and nurses on the staff of the hospital. The plaintiffs' expert testified that if the baby had been delivered about an hour earlier (i.e., around 2:00 P.M.), then the baby probably would have been normal. During the crucial period between 2:00 P.M. and 2:40 P.M., the mother's physician, Dr. Vosburgh, continued checking her labor every 5 or 10 minutes, and, despite the fact that the fetal monitoring tapes recorded intervals of slowing of the fetal heart rate, he did not attribute them to any fetal distress. At about 2:40 P.M., when he was notified by one of the nurses of a prolonged drop in the fetal heart rate, Dr. Vosburgh decided to try a different monitor rather than an immediate caesarian section. It was only after the second monitor had reflected signs of fetal distress, that Dr. Vosburgh ordered that the caesarian section be performed.

The record is clear, therefore, that the infant plaintiff's injuries were not proximately caused by any acts or omissions by the hospital staff but, rather, resulted, if at all, from the medical decisions and judgments of the plaintiffs' private physician. Lawrence, Balletta and Rosenblatt, JJ., concur.

Harwood, J. P., dissents, and votes to modify the judgment, on the law, by deleting the provision thereof which is in favor of the defendant North Shore University Hospital, to affirm the judgment as so modified, and to remit the matter to the Supreme Court, Nassau County, for a new trial with respect to that defendant, with the following memorandum: As the majority notes, a trial court, in deciding a motion for judgment as a matter of law, must conclude that " 'by no rational process could the trier of the facts' " find in favor of the nonmoving party (Colozzo v Lo Vece, 144 AD2d 617, 618; Dooley v Skodnek, 138 AD2d 102, 104; see also, Nicastro v Park, 113 AD2d 129). Since the evidence demonstrates that

the hospital residents had no contact with Mrs. Smith except while they were under, and thus bound by, the direct supervision of her attending physician, I agree with my colleagues that no rational trier of fact could find that the hospital residents' acts or failures to act were a proximate cause of the infant plaintiff's injuries and that so much of the judgment as dismisses the action as against the defendants Chudow, Herzog and Karafiol should be affirmed. The majority and I part company, however, with respect to whether the liability of the defendant hospital, on account of the conduct of its nursing staff, should have been determined by the jury.

During the lengthy trial of this action, the plaintiffs presented evidence that the nurses, who were in the labor room virtually throughout the critical stages of Mrs. Smith's labor, failed to properly monitor Mrs. Smith while a potentially dangerous drug, Pitocin, was being administered. They also presented evidence that, because of fetal distress, the nursing staff was obligated to, as one nurse ultimately did, turn off the Pitocin without an order from the attending physician, and that these failures to act were departures from good and accepted nursing practice. The majority evidently concludes, however, that these failures did not proximately cause the infant plaintiff's injury.

While it is clear from the record that the attending physician's delay in performing a caesarian section was a proximate cause of the infant plaintiff's devastating injury, as the majority appears to concede, it remains axiomatic that there may be more than one proximate cause of an injury *(see, e.g., Slater v Mersereau, 64 NY 138; see also, Galioto v Lakeside Hosp., 123 AD2d 421; cf., Ledogar v Giordano, 122 AD2d 834; Vialva v City of New York, 118 AD2d 701)*. Moreover, the issue of causation, always difficult in medical malpractice litigation *(see, Toth v Community Hosp., 22 NY2d 255, 261; see also, Ledogar v Giordano, supra, at 836; Vialva v City of New York, supra, at 703)*, is, upon establishment of a prima facie case, appropriate for resolution not as a matter of law but by the trier of fact *(see, Bell v New York Health & Hosps. Corp., 90 AD2d 270, 284)*. Here, expert evidence was adduced demonstrating that proper monitoring and earlier cessation of administration of Pitocin would have prevented a degree of the hypoxia which in turn caused the infant plaintiff's injury *(cf., Ledogar v Giordano, supra; Vialva v City of New York, supra; Mertsaris v 73rd Corp., 105 AD2d 67)*. It is my view that there was sufficient evidence from which a trier of fact could reasonably conclude that the nursing staff's failure or failures to act

constituted malpractice, and that the malpractice was a proximate cause of the infant plaintiff's injury. I thus conclude that it was error for the trial court, which denied the hospital's motion to dismiss at the end of the plaintiff's case, to thereafter remove the question of the hospital's liability from the jury and I vote to reverse so much of the judgment which is in its favor, and to remit the matter to the Supreme Court, Nassau County, for a new trial on that question.